Mattyas Mattyasovszky, Adm'r of the Estate of Mattyas Mattyasovszky, Jr., Deceased, Plaintiff-Appellee, *v.* West Towns Bus Company, Defendant-Appellant.

(No. 72-217;

Second District—July 2, 1974.

*Rehearing denied July 25, 1974.*

48

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellant.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A wrongful death action, charging ordinary negligence and wilful and wanton misconduct, was brought by plaintiff against defendant and its driver, Posey. Plaintiff sought both pecuniary and punitive damages arising from the death of the deceased. At the close of the case-in-chief, Posey was dismissed from the case. The jury's verdict found defendant guilty of wilful and wanton misconduct, awarded plaintiff $75,000 pecuniary damages and $50,000 punitive damages, and found, by way of a special interrogatory, that the decedent was not guilty of contributory negligence.

Three months after trial, plaintiff was permitted to amend the complaint to include two additional counts, one stating a cause of action under the survival statute, the other stating a cause of action under the common law for wilful and wanton misconduct.

Defendant appeals contending, as a matter of law, that it was free from wilful and wanton misconduct and that the deceased was guilty of contributory negligence; that the jury's findings on these two issues were against the manifest weight of the evidence; that the award of punitive damages was not proper when the injuries resulted in the decedent's death; and that the award for pecuniary damages was excessive.

On February 12, 1970, the deceased, aged 12, was a passenger on defendant's bus. He, along with other passengers, alighted through the rear exit. Realizing that he was at a wrong stop, he attempted to re-enter the bus via the rear door and, as the doors closed on his wrist and foot,

he became trapped on the outside of the bus. The conveyance started to move, passengers within shouted for the driver to stop and people outside pounded on the bus. The bus slowed, the driver turned his head, but the bus continued forward. Decedent freed himself from the door but was killed under the rear wheels of the bus.

It is contended that the defendant is not guilty of wilful and wanton misconduct as a matter of law because there is no evidence to support this finding; that the evidence presented concerning this charge so overwhelmingly favors the defendant that it is entitled to a judgment *n.o.v.* or, in the alternative, that the finding of wilful and wanton misconduct was against the manifest weight of the evidence.

■■ Wilful and wanton misconduct was defined for the jury as "an utter indifference to or a conscious disregard for the safety of others." (IPI2d—Civil § 14.01.) This definition is in accord with Illinois case law. (See *Myers v. Krajefska*, 8 Ill.2d 322, 328-29 (1956); *Klatt v. Commonwealth Edison Co.*, 33 Ill.2d 481, 487-88 (1965).) In determining whether the defendant was guilty of wilful and wanton misconduct as a matter of law, we may not consider conflicts in the evidence, credibility of the witnesses or the weight or preponderance of the evidence, but must take the evidence most favorable to the plaintiff as true. *Hering v. Hilton*, 12 Ill.2d 559, 562-63 (1958); *Kubajak v. VerBrugge*, 59 Ill.App.2d 344, 348-49 (1965).

Regarding judgments notwithstanding the verdict, the applicable rule of law is that a court should direct a judgment *n.o.v.* "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict * * * could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510 (1967).) Where there is sufficient evidence to submit the charge to the jury, the issue becomes a question of fact for the jury's determination. (*Schneiderman v. Interstate Transit Lines, Inc.*, 331 Ill.App. 143, 147 (1947), *aff'd*, 401 Ill. 172 (1948).) The jury is the judge of the credibility of the witnesses. (*Chicago City Ry. Co. v. O'Donnell*, 109 Ill.App. 616, 623 (1903), aff'd 207 Ill. 478 (1904).) "Where the trial court has heard the testimony and observed the witnesses we are not at liberty to disturb its judgment unless we can say that such judgment is manifestly against the weight of the evidence." (*Myers v. Krajefska, supra*, at page 328.) For a verdict to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Green v. Keenan*, 10 Ill.App.2d 53, 59 (1956).

In addition to the facts already related, evidence revealed that the defendant's bus lacked an outside, right rear-view mirror; that the bus' rear door safety device was inoperable due to the corrosion of the con-

tact points in the bell housing; that the driver was not required to check the rear door safety device prior to each run although such check required only a matter of minutes; that the driver had turned off the stop-signal bell; and that the driver was not calling out the stops. Defendant presented evidence that the driver did not hear the shouts of the passengers or the pounding of others upon the outside of the bus. Such evidence is contradicted by evidence showing that the driver slowed the bus and turned his head. In *Moore v. Jewel Tea Co.*, 116 Ill.App.2d 109, 136 (1969), *aff'd*, 46 Ill.2d 288 (1970), the court points out that "[v]alid jury questions of wilful and wanton conduct have been presented by as little as misjudging the distance of an approaching automobile, * * * and failing to look before making a left turn * * *."

■■  We hold that, contrary to defendant's position, there was evidence of wilful and wanton misconduct. We further hold that this evidence was sufficient to deny defendant a judgment *n.o.v.*

■■  Evidence that the defendant permitted the bus to carry passengers without an inspection of the rear door safety device and without the installation of an outside right rear-view mirror, and that the bus was moved forward without regard to the shouts of the passengers and the pounding of those outside, was sufficient basis for the jury's conclusion that defendant acted with an utter indifference to or a conscious disregard for the safety of the decedent. An opposite conclusion is not clearly evident. The verdict, finding defendant guilty of wilful and wanton misconduct, was not, therefore, against the manifest weight of the evidence.

Defendant maintains that the decedent was guilty of contributory negligence as a matter of law or, in the alternative, that by finding the decedent free from contributory negligence, the jury's verdict was against the manifest weight of the evidence. There is no claim that decedent was guilty of contributory wilful and wanton misconduct. Defendant's contention concerns only the issue of decedent's contributory negligence. Ordinary negligence on the part of the victim is not a defense in an action predicated upon wilful and wanton misconduct. (*Scott v. Instant Parking, Inc.*, 100 Ill.App.2d 293, 299-300 (1968); *Yelinich v. Capalongo*, 38 Ill.App.2d 199, 205-206 (1962).) Having found that the evidence was sufficient for the jury to find defendant guilty of wilful and wanton misconduct, we conclude that there is no justiciable issue concerning defendant's contributory negligence.

Defendant asserts that under the Wrongful Death Act (Ill. Rev. Stat. 1971, ch. 70, § 1 *et seq.*) pecuniary damages, not punitive damages, are proper. The act provides in relevant part:

"* * * [T]he amount recovered in every such action shall be

for the exclusive benefit of the widow and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person." (Ill. Rev. Stat. 1971, ch. 70, § 2.)

Plaintiff argues that where death is attributable to decedent's injuries, punitive damages can be awarded to the estate of the decedent or to his heirs, upon either of two alternative bases: (a) the common law of Illinois, or (b) the survival statute (Ill. Rev. Stat. 1971, ch. 3, § 339).

Early common law in Illinois established that a living plaintiff may recover both compensatory and punitive damages when the injury was the result of the wilful and wanton misconduct of the defendant. (*Chicago & A. R. R. v. Wilson*, 63 Ill. 167, 173 (1872).) This is still the law. (*Moore v. Jewel Tea Co., supra.*) Whether the common law also provides this relief to the estate or heirs of a decedent when the death is attributable to the claimed injuries requires an examination of two distinct common law rules here pertinent: (1) that a plaintiff may not complain of the death of another as causing injury to him, and (2) that personal actions abate with the death of the injured party. The two rules can be distinguished by the party seeking damages. Under the first rule, the heirs would seek damages for their own losses occasioned by the wrongful death. Under the second rule, the estate of the victim would seek damages for losses incurred on the victim's behalf as a result of the injuries.

The basis for the first of those common law rules is found in the root of English common law (Roman law), the Lex Aquilia. Therein, compensation was allowed for injuries caused to a freeman by another's wrongful act (Grueber, Lex Aquilia, 17; Dig. ix. 1.3; ix. 2.13 pr; ix. 3.7) but it was provided that no damages were recoverable for the death of a freeman (Grueber, Lex Aquilia, 17; Dig. ix. 3.1.5). The latter resulted from the conviction that to put a value on the life of a freeman was to reduce him to the status of a slave (property). Since no pecuniary value for his life could be ascertained, it was impossible to award damages. Although later criticized as having no place in our common law (Holdsworth, *The Origin of the Rule in Baker v. Bolton*, 32 Law Quarterly Review 431 (1916)), the concept took hold in England in the case of *Baker v. Bolton*, 1 Camp. 493, 10 R.R. 734, 170 Eng. Reprint 1033 (1808), wherein the plaintiff's wife had been injured in a stagecoach mishap which was due, presumably, to ordinary negligence on the part of the defendant carrier. The woman died of her injuries a month later and suit was instituted by the husband for his loss of consortium and services. While damages were

allowed for loss of services between the time of injury and death, none were awarded for the losses occasioned by the woman's death. Lord Ellenborough stated, "In a civil court, the death of a human being could not be complained of as an injury; and in this case the damages as to the plaintiff's wife must stop with the period of her existence."

The second of the common law rules set forth (the abatement rule) originated early in the history of English law. (Malone, *The Genesis of Wrongful Death*, 17 Stan. L. Rev. 1043; 1044 (1965).)

■■ The courts of Illinois have recognized both axioms as the common law. In *Crane v. Chicago & W. I. R. R. Co.*, 233 Ill. 259, 262 (1908), the supreme court reiterated the first rule by stating, "At the common law no action could be maintained against any person or corporation causing the death of another by wrongful act, neglect or default." In *Murphy v. McGrath*, 79 Ill. 594, 595 (1875), the supreme court recognized the abatement rule and stated, "At common law, doubtless the action would have abated on the death of the plaintiff before final judgment * * *." *Saunders v. Schultz*, 20 Ill.2d 301, 309-11 (1960), expanded the Illinois common law by allowing the estate or heirs of the victim to recover pecuniary losses, not otherwise recoverable under our Wrongful Death Act, when the victim's death was due to the wrongful act of another. The change occasioned by *Saunders* was specifically limited to pecuniary losses. In all other respects the common law remains undisturbed. We, therefore, find that there is no presently-recognized common law cause of action in Illinois by which punitive damages may be granted in a wrongful death action.

■■ In order to alleviate the harsh and unjust result of the common law, our legislature, in 1853, enacted the Wrongful Death Act and, in 1872, enacted the survival statute. The purpose of each statute is distinct. It was the purpose of the Wrongful Death Act to allow the heirs of the decedent to collect for their pecuniary losses suffered as a result of the death. The survival statute was enacted to allow the continuation of specific types of suits that would otherwise abate under the common law due to the death of one of the parties. Under the holding of *Holton v. Daly*, 106 Ill. 131 (1882), the Wrongful Death Act provided the exclusive remedy where the decedent had died of the complained-of injuries and further provided that no action for damages could be brought under the Survival Statute when the injuries resulted in the death of the decedent. This distinction was extinguished in *Murphy v. Martin Oil Co.*, 56 Ill.2d 423, 431 (1974), wherein the court expressly overruled *Holton* and held that both the heirs and the estate may sue for injuries caused by the wrongful death. Thus, it is the law in Illinois today that the heirs may bring a suit under the Wrongful Death Act for their pecuniary losses

and the estate may bring a suit under the survival statute to recover damages for injury to the person and property of the decedent even though death is attributable to the injuries. However, the *Murphy* case in no way affected *Conant v. Griffin*, 48 Ill. 410, 412-13 (1868), wherein the court found that punitive damages were not recoverable under the Wrongful Death Act. This is still the law today. *Baird v. Chicago, B. & Q. R.R. Co.*, 11 Ill.App.3d 264, 268-70 (1973).

Left unanswered is the question of whether punitive damages are recoverable under that portion of the Survival Statute which states, "In addition to actions which survive by the common law, the following survive: * * * actions to recover damages for an injury to the person * * *." We initially note that the statute is to be liberally construed (*Devine v. Healy*, 241 Ill. 34, 40 (1909); *Northern Trust Co. v. Palmer*, 171 Ill. 383, 387 (1898)), and that the present trend is to allow punitive damages where a person has died due to the wilful and wanton conduct of another. (Holthus, *Punitive Damages in Wrongful Death*, 20 Clev. St. L. Rev. 301 (1971).) A majority of jurisdictions deny recovery of punitive damages under their wrongful death, survival or hybrid statutes.

Simply stated, the matter is essentially one of statutory construction. Most states that deny recovery of punitive damages do so under the theory that the right to recover damages for wrongful death did not exist at common law and the statute must be strictly construed. Therefore, where the right to punitive damages is not expressly stated, the statute has been interpreted to mean that no right exists. States that allow punitive damages have found that the purpose of the statute is to punish the wrongdoer, or that the public has a right to be protected from such objectionable conduct by making an example of the wilful and wanton tortfeasor, or that the statute is remedial in nature and the legislative intent was to allow punitive damages.

A case in point is *Reynolds v. Willis*, 58 Del. 368, 209 A.2d 760, 763-64 (1965), wherein the court allowed recovery of punitive damages under the Survival Statute but not under the Wrongful Death Act and in so doing noted that, "theoretically, there appears to be no reason for withholding this punishment simply because the victim [died] from the injuries received." Similarly, in *Hennigan v. Atlantic Refining Co.*, 282 F. Supp. 667, 683 (1967), *aff'd*, 400 F. 2d 857 (1968), *cert. denied*, 395 U.S. 904, 23 L.Ed.2d 216, 89 S.Ct. 1739 (1969), the Federal court (in applying Pennsylvania's survival statute) noted that, "since the function of punitive damages is to punish outrageous conduct and to discourage similar conduct in the future, Restatement, Torts, § 908, Comment (a) (1939), it would appear to be inconsistent to disallow such

an award where the conduct of the defendant is not only reprehensible but in fact results in death." An examination of the Delaware and Pennsylvania survival statutes in effect at the time of these opinions must be considered due to the marked similarities in their wording. See 10 Del. Code Ann., § 3701 (1963); 20 Pa. Stat. Ann., § 320.601 (1949).

Such a construction of our own survival statute would once and for all put to rest the old adage that it is cheaper to kill your victim than to leave him maimed. In addition to deterring others from wilful and wanton misconduct, it would bring death actions into complete harmony with the general body of law governing other types of tortious conduct. Logically, it would seem that punitive damages should be allowed to the estate of the decedent under the survival statute.

■■■ The logic for allowing such a recovery finds support in the reasoning of *Murphy v. Martin Oil Co., supra,* at page 431, wherein the court stated:

> "To say that there can be recovery only for his wrongful death is to provide an obviously inadequate justice. Too, the result in such a case is that the wrongdoer will have to answer for only a portion of the damages he caused. Incongruously, if the injury caused is so severe that death results, the wrongdoer's liability for the damages before death will be extinguished. It is obvious that in order to have a full liability and a full recovery there must be an action allowed for damages up to the time of death, as well as thereafter."

Despite our highest desires, however, law is not always based upon logical rationale. The survival action for damages for injury to the person is a creature of statute and the intent of the legislature, as expressed in the statute, is controlling. The words "damages for injury to the person" clearly and unequivocally mean damages of a physical character. (See *Shedd v. Patterson,* 230 Ill.App. 553, 557 (1923), *aff'd,* 312 Ill. 371 (1924).) Punitive damages are not damages of a physical character. They are those assessed in the interest of society to punish the defendant and to warn him and others that such acts are offenses against society. (*Eshelman v. Rawalt,* 298 Ill. 192, 197 (1921).) No plaintiff has a vested right to punitive damages. The legislature may restrict or deny the allowance of such damages at will. (*Smith v. Hill,* 12 Ill.2d 588, 595 (1958).) Although the survival statute is found to be remedial in nature and is to be liberally construed (*McDaniel v. Bullard,* 34 Ill.2d 487, 492 (1966)), the words of the statute must be construed to take on their ordinary, popularly-accepted meaning. (*Jones v. Barmm,* 217 Ill. 381 (1905).) The reason for the old common-law rule of abatement seems to be that a tort action was originally regarded as punitive in character. (*McDaniel v.*

*Bullard, supra,* at page 493.) The legislature modified the rule of abatement when it limited recovery under the survival statute to damages of a physical character. We find that by allowing actions to survive for damages for injury to the person, the legislature intended to allow the recovery of only compensatory damages. Thus we hold that there exists no right to punitive damages under the survival statute.

■■■ Anticipating the possibility of our holding that punitive damages were not proper in the case at bar, plaintiff contends that any error in this regard was waived by defendant's failure to object to the award at trial. Defendant did, in fact, challenge the award of punitive damages in its post-trial motion and it can thus be assumed that the trial court considered the issue in denying plaintiff's motion. Regardless, this is not the type of error to which the rule of waiver applies. The error involved is not one which relates to a matter within the discretion of the trial court but, rather, is one which goes to the heart of the complaint. The issue is whether the complaint was legally correct in seeking punitive damages. While one may waive defects in a complaint which contains an incomplete or otherwise insufficient statement of a good cause of action, the question of whether there is a legal basis for the complaint can be raised at any time. (*People ex rel. Hanrahan v. One 1965 Oldsmobile,* 52 Ill.2d 37, 46 (1972); *Wagner v. Kepler,* 411 Ill. 368, 371 (1951); *Watson v. Chicago Transit Authority,* 12 Ill.App.3d 684, 688 (1973).) Following these cases, we find the rule of waiver to be inapplicable to the issue of whether the plaintiff has a legal right to seek punitive damages and, for the above reasons, we vacate the award of punitive damages.

■■ Defendant seeks to have the case remanded to the trial court because the jury was erroneously instructed that they could award punitive damages if they found the defendant guilty of wilful and wanton misconduct. This error does not require remandment because (1) any error in instructing the jury that they could award punitive damages was waived by defendant's failure to object to the instruction (*Delany v. Badame,* 49 Ill.2d 168, 178 (1971); *Russo v. Kellogg,* 37 Ill.App.2d 336, 341-42 (1962)) and (2) the defendant could not have been prejudiced by this instruction inasmuch as there were separate verdicts for pecuniary and punitive damages. Compare *Baird v. Chicago, B. & Q. R. R. Co., supra.*

Defendant also seeks remandment on the basis that he was prejudiced in the eyes of the jurors by the trial court allowing arguments, evidence and instructions on wilful and wanton misconduct. This claim is without merit. Wilful and wanton misconduct is a ground for seeking recovery of pecuniary damages in a wrongful death action. *Chicago City Ry. Co. v. O'Donnell, supra.*

Defendant claims that the pecuniary award of $75,000 was excessive, that it was based on passion, prejudice, speculation and sentimentality. Decedent was the oldest of four children. He did all of the outside maintenance chores for the family (*e.g.*, summer yard work and painting the garage). He repaired watches and television sets and, at the time of his death, was gainfully employed as a representative of a Chicago newspaper. With funds earned, he had purchased a lawn mower for his family, contributed to the purchase of his own clothing and that of the other children. He assisted his parents in caring for the children. When his mother was ill, he took over household functions. He planned to go to college and, after graduation, to help finance the education of the three younger children.

■■■ "There is a presumption of a pecuniary loss in favor of the lineal heirs of the deceased in a wrongful death action arising from the relationship alone. The decedent's parents are, of course, lineal next of kin." (*Jung v. Buelens,* 77 Ill.App.2d 391, 398 (1966).) Fixing the amount of damages is a function of the trier of fact and that determination will not be disturbed unless obviously the result of passion or prejudice. (*Maca v. Rock Island-Moline City Lines, Inc.,* 47 Ill.App.2d 31, 37 (1964).) Based on the evidence presented, we cannot say that the jury's award was obviously based upon passion or prejudice.

The judgment awarding $50,000 punitive damage is vacated. In all other respects, the judgment is affirmed.

Judgment affirmed in part and vacated in part.

SEIDENFELD and RECHENMACHER, JJ., concur.