(No. 46967

MATYAS MATTYASOVSZKY, Adm'r, Appellant, v. WEST TOWNS BUS COMPANY, Appellee.

*Opinion filed June 2, 1975.*

GOLDENHERSH, J., dissenting.

O'Reilly and Quetsch, of Wheaton (Roger K. O'Reilly, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, of counsel), for appellee.

Jerome Mirza, of Bloomington, *amicus curiae.*

MR. JUSTICE SCHAEFER delivered the opinion of the court:

Matyas Mattyasovszky, Jr., a 12-year-old boy, left a bus operated by the defendant, West Towns Bus Company, by the rear door at the wrong stop. When he attempted to reenter, his foot was apparently momentarily caught in the door, and he fell under the wheels and was killed as the bus moved forward. In this action, brought by his father as administrator of his estate, a jury found the defendant guilty of willful and wanton conduct and awarded the plaintiff $75,000 pecuniary damages and $50,000 punitive damages. Judgment was entered on the verdict and the defendant appealed. The appellate court affirmed the award of pecuniary damages, but reversed the judgment which awarded punitive damages. (21 Ill. App. 3d 46.) We

granted leave to appeal.

Many interesting and important questions that arose in the trial and appellate courts have not been brought forward for review, and as the case comes to this court the issues are severely limited. Only two questions are presented: (1) Are punitive damages recoverable under the "Survival Act" (Ill. Rev. Stat. 1971, ch. 3, par. 339), and (2) Is there a common law action for wrongful death which includes the element of punitive damages.

The Survival Act, upon which the plaintiff relies primarily for a reversal of the judgment of the appellate court, reads as follows:

> "In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property ***."

This statute has never been thought to authorize the award of punitive damages. The plaintiff's contention that it should now be construed to do so rests largely upon the recent decision of this court in *Murphy v. Martin Oil Co.* (1974), 56 Ill.2d 423, which authorized recovery for a decedent's pain and suffering during the interval between injury and death, as well as for pecuniary loss. But nothing in that opinion was intended to or did authorize the recovery of punitive damages. On the other hand, the opinion both intrinsically and through its reliance upon *McDaniel v. Bullard* (1966), 34 Ill.2d 487, emphasized the compensatory nature of damages authorized under the Survival Act. We find nothing in the *Murphy* case which suggests a change in the law of this State which for more than a hundred years has limited recovery under the Survival Act to compensatory damages.

Apart from our *Murphy* and *McDaniel* cases the plaintiff relies upon the decisions of the courts of other States construing the language of their survival statutes.

From them he argues that punitive damages should be allowed in the present case. We do not find those decisions persuasive. The actions which survive under our statute are "actions to recover damages for an injury to the person," and as we have pointed out, the very decisions that have recently expanded the right to recover under it have emphasized the compensatory nature of the recovery it authorizes.

In addition to his argument based upon the construction of the statute, the plaintiff urges that this court should now recognize a common law action for the death of a person which can include exemplary damages. He suggests that we follow the example of the Supreme Court of the United States in *Moragne v. States Marine Lines, Inc.* (1970), 398 U.S. 375, 26 L. Ed. 2d 339, 90 S. Ct. 1772, and of the Supreme Judicial Court of Massachusetts in *Gaudette v. Webb* (Mass. 1972), 284 N.E.2d 222, and we therefore turn to a consideration of those cases.

In *Moragne* the Supreme Court employed the technique of statutory analogy (see Leflar, Appellate Judicial Opinions 43-45, 121-126 (1974)) to create a common law remedy for wrongful death. It did so in order to supply a remedy for a unique situation that somehow remained uncovered in the midst of a cluster of State and Federal statutes relating to injuries and deaths of seamen, longshoremen and others. In *Gaudette v. Webb,* the Massachusetts court relied upon *Moragne* to permit a widow, the mother of three minor children, to maintain, as administratrix of her husband's estate, a wrongful death action which had been commenced after the statutory period for the institution of such an action had expired. Earlier decisions had regarded the limitation period as bearing upon the right to bring the action and had held that the right was lost when the period expired. In the *Gaudette* case the court pointed out that under the statute the minor children of the deceased could not have instituted an action themselves. "They depended upon their mother to

proceed in their behalf." The court concluded that although the mother's right to share in the recovery was barred by limitations, the action could be maintained on behalf of the children. In other respects the Massachusetts decision seems not to have disturbed the statutory wrongful death action in that State.

It is against the factual setting of these cases that we measure the plaintiff's insistence that a common law right to recover punitive damages should now be judicially established. Historically, the practice of awarding punitive damages seems to have "originated in the English courts in the eighteenth century as a means of justifying awards of damages in excess of the plaintiff's tangible harm." (Note, *Exemplary Damages in the Law of Torts,* 70 Harv. L. Rev. 517, 518 (1957).) But it is unnecessary to pursue the possible historical origins in connection with this case, for it is generally recognized today that punitive damages are awarded primarily to punish the offender and to discourage other offenses. Restatement (Second) of Torts, sec. 908 (Tent. Draft No. 19, 1973); Prosser, Law of Torts 9 (4th ed. 1971).

The underlying strength of these objectives of punishment and deterrence varies substantially from case to case. Where, for example, the defendant has benefited by his misconduct, a judgment which only compensates the plaintiff for what he has lost would permit the defendant to keep his wrongful gain. Apart from such cases, the situations in which punitive damages become an issue cover a broad spectrum that ranges from the intentional tort which is also a crime (see, *e.g., Knierim v. Izzo* (1961), 22 Ill.2d 73, 78), to what we characterize today as "willful and wanton" conduct, a characterization that shades imperceptibly into simple negligence.

The objectives of an award of punitive damages are the same as those which motivate the criminal law—punishment and deterrence. Yet in a criminal case the conduct which gives rise to the imposition of punishment must be

clearly defined. That is not so when the question is whether the conduct of the defendant can be characterized as either negligence or as willful and wanton conduct. The fine that is imposed upon the defendant in a criminal case goes to the State. But in a civil case the exaction taken from the defendant, under the label of exemplary damages, becomes a windfall for the plaintiff. The maximum and minimum amounts of the fine imposed by way of punishment and deterrence in a criminal case are fixed by statute. In the civil case, however, the jury is left at large to take from the defendant and deliver to the plaintiff such amount as it sees fit. In the case before us, for example, the jury was given the following instruction:

> "If you find that defendant was guilty of wilful and wanton conduct which proximately caused death to the plaintiff's decedent and if you believe that justice and the public good require it, you may, in addition to any damages to which you find plaintiff entitled, award plaintiff an amount which will serve to punish the defendant and to deter others from the commission of like offenses."

Moreover, the punitive and admonitory justifications for the imposition of punitive damages are sharply diminished in those cases in which liability is imposed vicariously. (Compare *Roginsky v. Richardson-Merrell, Inc.* (2d Cir. 1967), 378 F.2d 832, with *Toole v. Richardson-Merrell, Inc.* (1967), 251 Cal. App. 2d 689, 60 Cal. Rptr. 398. See Restatement (Second) of Torts, sec. 909 (Tent. Draft No. 19, 1973); Prosser, Law of Torts 12 (4th ed. 1971).) With respect to this problem, section 217C of the Restatement (Second) of Agency states:

> "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
>
> (a) the principal authorized the doing and the manner of the act, or
>
> (b) the agent was unfit and the principal was reckless in employing him, or
>
> (c) the agent was employed in a managerial capacity

and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act."

Serious questions inevitably arise in a case like the present, in which the driver of the bus, whose conduct was primarily responsible for the injury, is no longer a party defendant because he was dismissed by the plaintiff before the case went to the jury.

It is apparent, we think, that the strong equitable considerations that were present in the *Moragne* and *Gaudette* cases are lacking in the case before us. As we have indicated, *Gaudette* appears to have involved only a revised construction of the limitation period so that minor children would not be barred from maintaining an action for the wrongful death of their father by the failure of the responsible adult to take action at the proper time. And unlike *Moragne,* we do not deal here with a unique situation in which, inexplicably, there is no remedy. The single occurrence involved in the case before us already gives rise to two distinct statutory actions: in one the damages recovered go to the decedent's estate, and so are available to the claims of creditors, and in the other the damages recovered go to the surviving spouse and next of kin of the deceased.

For the reasons stated in this opinion, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

### Addendum

Although no issue has been raised with respect to the matter, we consider it important, in the exercise of our supervisory jurisdiction, to direct attention to the "issue" instruction that was given to the jury in this case. The introduction of the drafting committee to its form for this instruction emphasizes conciseness and absence of repetition, and refers to an earlier practice, saying:

> "These lengthy quotes from the complaint lent the office of the trial judge to the plaintiff to state his case to the

jury. Frequent warnings by the appellate courts went unheeded by lawyers representing plaintiffs until 1953, when the Appellate Court for the First District reversed a case in which an almost 800-word summary of the complaint had been given to the jury. *Signa v. Alluri*, 351 Ill. App. 11, 113 N.E.2d 475 (1st Dist. 1953)." (Illinois Pattern Jury Instructions—Civil, at 105 (1961).)

The issue instruction in this case contained more than 700 words of direct quotation from the plaintiff's complaint. In that instruction each of the phrases "negligently and carelessly" and "with utter indifference to or conscious disregard for" was repeated eight times in describing the conduct of the defendant. This instruction was improper.

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I agree with the statement of the appellate court that a construction of our survival statute which did not preclude recovery of punitive damages "would once and for all put to rest the old adage that it is cheaper to kill your victim than to leave him maimed. In addition to deterring others from wilful and wanton misconduct, it would bring death actions into complete harmony with the general body of law governing other types of tortious conduct. Logically, it would seem that punitive damages should be allowed to the estate of the decedent under the survival statute." 21 Ill. App. 3d 46, 54.

In 1853 when the General Assembly enacted the wrongful Death Act (Laws of 1853, at 97), and in 1872 when the Survival Act (Rev. Stat. 1874, ch. 3, par. 122) was enacted the principle that punitive damages could be awarded was already firmly established. (See *Peoria Bridge Association v. Loomis*, 20 Ill. 236, 251.) Early in our history this court said, "Where the wrong is wanton, or it is willful, the jury are authorized to give an amount of damages beyond the actual injury sustained, as a punishment, and to preserve the public tranquillity. *Foot v. Nichols*, 28 Ill. 486." *Hawk v. Ridgway*, 33 Ill. 473, 476.

The majority treats as established doctrine that

punitive damages may not be recovered in an action for wrongful death. The only authority for that proposition is *dictum* in *Conant v. Griffin*, 48 Ill. 410, which did not involve a verdict awarding punitive damages. It is further to be noted that *Conant*, decided in 1868, was not cited as authority for that proposition until 1973. See *Baird v. Chicago, Burlington and Quincy R.R. Co.*, 11 Ill. App. 3d 264.

Assuming, *arguendo*, that *Conant v. Griffin* is authority for the majority's holding, I find apposite here our comment in *Murphy v. Martin Oil Co.*, 56 Ill.2d 423, "What this court observed in *Molitor v. Kaneland Community Unit Dist. No. 302* (1959), 18 Ill.2d 11, 26, may appropriately be said again:

'We have repeatedly held that the doctrine of *stare decisis* is not an inflexible rule requiring this court to blindly follow precedents and adhere to prior decisions, and that when it appears that public policy and social needs require a departure from prior decisions, it is our duty as a court of last resort to overrule those decisions and establish a rule consonant with our present day concepts of right and justice. (*Bradley v. Fox*, 7 Ill.2d 106, 111; *Nudd v. Matsoukas*, 7 Ill.2d 608, 615; *Amann v. Faidy*, 415 Ill. 422.)' " 56 Ill.2d 423, 431-32.