NEESE, District Judge.
 

 The plaintiff moved the Court to admit as additional exhibits for the trial herein two official transcripts of the proceedings in
 
 The People of the State of Illinois v. H. Sherrod,
 
 criminal action no. 77-1-767826-01 in the Circuit Court of Cook County, Illinois, Municipal Department, First Division. The defendant objected thereto on the ground that such proposed exhibits are irrelevant
 
 [1]
 
 and, thus, inadmissible. Rule 402, Federal Rules of Evidence.
 

 
 *49
 
 These court records reflect that a motion to vacate was sustained
 
 ex parte
 
 on June 29, 1978, and that the state of Illinois took a nonsuit in such criminal action on August 16, 1978. Purportedly, this criminal charge against the plaintiff herein arose out of the incident which occurred on the defendant’s aircraft and which forms the basis of this action.
 

 “ * * * It is a general rule, which is subject to a number of exceptions, that in the absence of a statutory provision to the contrary, a judgment of conviction or acquittal rendered in a criminal prosecution may not be given in evidence in a subsequent civil action, where the judgment is offered * * * to establish the truth of facts upon which it was rendered. * * * ” 30 Am.Jur.(2d) 114, Evidence § 985. None of the exceptions listed to this general rule appear applicable herein.
 
 [2]
 
 Even if the aforementioned state criminal proceedings had resulted in Mr. Sherrod’s acquittal, such would have been “ * * * of no relevance in a civil proceeding where the facts need only be proved by the greater weight of the evidence. * * * ” 29 Am.Jur.(2d) 385, Evidence § 355; see also
 
 Aetna Life Insurance Company v. McDuffie,
 
 C.A.6th (1960), 273 F.2d 609, 610[2, 3]. The termination of that state criminal proceeding is not an element of any remaining claim herein. See 29 Am.Jur.(2d),
 
 supra.
 

 The proposed additional exhibits, thus being irrelevant, the objection of the defendant thereto hereby is SUSTAINED, and the motion of the plaintiff hereby is OVERRULED. The clerk will mark such exhibits “for identification only.”
 

 The motion of the plaintiff herein of September 28, 1978 to amend the ad damnum claim of his complaint hereby is GRANTED. Rule 15(a), Federal Rules of Civil Procedure;
 
 McKay v. Headley,
 
 D.C. Tenn. (1977), 76 F.R.D. 113, 115. The plaintiff also moved the Court on September 29, 1978 to amend the statement of his claims herein as reflected in the pretrial order. These proposed amendments, however, do not relate to any of the plaintiff’s remaining claims herein, that the defendant discriminated against him in violation of 49 U.S.C. § 1374(b), breached his transportation contract, and was guilty of outrageous conduct. Rather, the proffered amendments concern his claims of false arrest and imprisonment, malicious prosecution, and abuse of process which are no longer before this Court but are on appeal interlocutorily to the Sixth Circuit. The filing of a notice of appeal herein by the plaintiff relating to these former claims divested this Court of jurisdiction over the same, and the Court cannot consider such motion.
 
 First Nat. Bank of Salem, Ohio v. Hirsh,
 
 C.A.6th (1976), 535 F.2d 343, 345 n. 1; 9 Moore’s Federal Practice (2d ed.) 734-735, ¶ 203.11.
 

 On Motion For Directed Verdict
 

 The defendant moved for a directed verdict at the end of the plaintiff’s evidence on the issues of both compensatory and punitive damages under each of the remaining 3 theories of the plaintiff. Rule 50(a), Federal Rules of Civil Procedure. As to the issue of compensatory damages, such motion is OVERRULED.
 

 There is evidence from which the jury might find that the defendant, an air carrier, subjected the plaintiff to unjust discrimination and undue and unreasonable prejudice and disadvantage and damages herein. See 49 U.S.C. § 1374(b). There is also evidence from which the jury might find the plaintiff was injured by his wrongful ejection from the defendant’s aircraft both in breach of the contract of carriage of the parties and the tort accompanying that breach.
 
 *
 
 See 7 Ill.Law of Practice 97-99,
 
 *50
 
 § 598. There is likewise evidence from which the jury might find that the conduct of Piedmont’s stewardess Ms. Adams was extreme and outrageous, that she acted with reckless disregard of the probability of causing Mr. Sherrod emotional distress, and that Mr. Sherrod actually suffered proximately severe emotional distress.
 
 DeBolt v. Mutual of Omaha,
 
 C.A.Ill. (1978), 56 Ill. App.3d 111, 13 Ill.Dec. 656, 658, 371 N.E.2d 373, 375[2];
 
 Public Finance Corporation v. Davis
 
 (1976), 66 Ill.(2d) 85, 4 Ill.Dec. 652, 654, 360 N.E.(2d) 765, 767[1], [2, 3], [4].
 

 The motion as it relates to punitive damages has merit in some aspects and lacks merit in others. Under the plaintiff’s claim of the outrageous conduct of the defendant’s stewardess, punitive damages may not be awarded under Illinois law.
 
 Ledingham v. Blue Cross Plan for Hospital Care, Etc.,
 
 C.A.Ill. (1975), 29 Ill.App.3d 339, 330 N.E.2d 540, 548-549[7], citing
 
 Knierim v. Izzo
 
 (1961), 22 Ill.2d 73, 174 N.E.2d 157. As to that claim of punitive damages, therefore, the defendant’s motion hereby is GRANTED. As to the claim of Mr. Sherrod that the defendant subjected him to unjust discrimination and undue or unreasonable prejudice and disadvantage, there is evidence which would support an award by the jury of punitive damages.
 
 Cf. Wills v. Trans World Airlines, Inc.,
 
 D.C.Cal. (1961), 200 F.Supp. 360, 367-368[8]. As to the claim of the plaintiff that he was wrongfully ejected from the defendant’s aircraft, there is evidence from which the jury might find that the conduct of the defendant’s personnel was wanton, gross and outrageous. Accordingly, an award of punitive damages on this claim would be appropriate. See 7 Ill.Law of Practice,
 
 supra.
 
 As to the 2 immediately above claims of the plaintiff, therefore, the defendant’s motion hereby is OVERRULED.
 

 On Motion To Interview Jurors
 

 The defendant moved this Court to allow it to interview jurors herein in an effort to ascertain whether “ * * * they may have indulged in bias, prejudice or unaccountable whim * * * with respect to how the damages were assessed * * * ” herein. That motion is devoid of any merit whatsoever and hereby is DENIED emphatically.
 

 What the defendant seeks obviously to delve-into involves the mental processes of the jurors in agreeing upon and making the awards of damages herein and the nature of the specific influences which prompted each juror to propose or agree to them. The defendant, as the defeated party herein, will not be permitted to invade the privacy of the jury-room in its effort to discover some evidence of “ * * * bias, prejudice or unaccountable whim. * * * ” A natural result of any such type of inquiry would be to make what was intended and carried forward herein as a private deliberation a subject of public investigation, to the destruction of the frankness and freedom to discuss and confer together which should epitomize all deliberations of a jury. See and
 
 cf. McDonald v. Pless
 
 (1915), 238 U.S. 264, 267-268, 35 S.Ct. 783, 784, 59 L.Ed. 1300, 1302.
 

 On Motion For Judgment NOV
 

 The defendant moved for a judgment notwithstanding the verdict herein on the ground,
 
 inter alia,
 
 that the Court should have granted its motion for a directed verdict at the conclusion of all the evidence on the issue of punitive damages. Under the instructions of the Court, the jury could have awarded punitive damages only after finding the defendant liable to the plaintiff for wanton and oppressive conduct on his theory either that (a) Piedmont committed the tort under Illinois law of causing him to be ejected forcibly from its aircraft, or (b) that Piedmont discriminated against him as an air passenger in violation of a federal statute, 49 U.S.C. § 1374(b).
 

 Mr. Sherrod made no claim and offered no proof that the defendant knew that its employees (Ms. Ann Adams and Mr. Roy Brown) were unsuitable employees in any respect, or that the defendant-corporation participated in any aspect in the events
 
 *51
 
 leading to Mr. Sherrod’s injury, or that the company ratified their mistreatment of Mr. Sherrod. In an earlier situation involving another professional man who was a passenger in Illinois on a common carrier (a railroad), where such passenger was arrested on complaint of the carrier’s employee and ejected forcibly from a conveyance, the Supreme Court ruled that the carrier could not be charged with punitive damages for the wanton and oppressive conduct of its employee toward that passenger, because there had been no claim by the plaintiff, and no evidence reflecting, that the carrier’s employee was known to the carrier to be an unsuitable employee in any respect, or that the carrier participated in any respect in its employee’s wrongful conduct, or that the carrier ratified its employee’s treatment of the passenger.
 
 Lake Shore & Michigan Southern R. Co. v. Prentice
 
 (1893), 147 U.S. 101, 117, 13 S.Ct. 261, 266, 37 L.Ed. 97, 104 — 105 (headnote 6).
 

 The basis of the
 
 Prentice decision, supra,
 
 was general jurisprudence, as opposed to the local law of Illinois.
 
 Ibid.,
 
 147 U.S. at 106, 13 S.Ct. at 262, 37 L.Ed. at 101. It antedated by 55 years the decision of the Supreme Court in
 
 Erie R. Co. v. Tompkins
 
 (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and the enactment of the federal rules of decision statute, 28 U.S.C. § 1652. The
 
 Erie rule
 
 and the aforecited statute apply only to diversity claims,
 
 Guaranty Trust Co. of New York v. York
 
 (1945), 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, 2086 (headnote 2), and not to Mr. Sherrod’s federal claim,
 
 United States v. Standard Oil Co.
 
 (1947), 332 U.S. 301, 307-308, 67 S.Ct. 1604, 1607-08, 91 L.Ed. 2067, 2071-2072 (headnote 3). However, the rationale of
 
 Prentice, supra,
 
 continues to be followed and applied in the
 
 post-Erie
 
 era, at least in the Second Circuit in some contexts, see
 
 In re Marine Sulphur Queen,
 
 C.A.2d (1972), 460 F.2d 89, 105[38], certiorari denied
 
 sub nom. United States Fire Ins. Co. v. Marine Sulphur Transport Co.
 
 (1972), 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (an action in admiralty), and
 
 Williams v. City of New York,
 
 C.A.2d (1974), 508 F.2d 356, 360-361[8] (an action for damages for malicious prosecution in which there were quotations from
 
 Lake Shore, supra.)
 
 The precise point of law involved herein, having been determined by a majority decision of the Supreme Court, ordinarily this Court of inferi- or rank would be obliged to follow the
 
 Prentice, supra,
 
 rule.
 
 Hertz v. Woodman
 
 (1910), 218 U.S. 205, 212-213, 30 S.Ct. 621, 622, 54 L.Ed. 1001, 1005.
 

 In light of these realities, counsel hereby are ORDERED to submit to the Court through the clerk within 15 days herefrom respective memoranda with authorities on the question:
 

 What is any effect of the
 
 Prentice
 
 case,
 
 supra,
 
 on the diversity claim of the plaintiff predicated upon the Illinois tort?
 

 The clerk will serve a copy hereof forthwith on all counsel of record herein by postal service.
 

 On Judgment NOV As To Damages
 

 The jury returned a verdict for the plaintiff Howell H. Sherrod, Jr., Esq. against the defendant Piedmont Aviation, Inc. and awarded him compensatory damages of $100,000 and punitive damages of $100,000 herein. The defendant interposed timely motions for a judgment notwithstanding the verdict, Rule 50(b), Federal Rules of Civil Procedure, or, in the alternative, for a new trial. Rules 59(a), (b), Federal Rules of Civil Procedure.
 

 The defendant asserts as grounds for its motion for a judgment notwithstanding the verdict,
 
 inter alia,
 
 the excessiveness of the verdict as to both compensatory and punitive damages. Obviously, this was not stated as a ground for the defendant’s motion for a directed verdict at the conclusion of the evidence, and the defendant cannot add it as a new ground in its motion for a judgment notwithstanding the verdict.
 
 Sulmeyer v. Coca-Cola Company,
 
 C.A.5th (1975), 515 F.2d 835, 846[11], certiorari denied (1976), 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341. The defendant may only “ * * * move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with [its] motion for a directed verdict. * * * ” Rule 50(b),
 
 supra.
 

 
 *52
 
 The defendant asserts that its motion for a directed verdict was made “ * * * on general grounds and also * * * on specific grounds with respect to punitive damages claimed by the plaintiff. * * * ” A
 
 motion for
 
 a directed verdict must state the grounds on which it is made. Rule 50(b),
 
 supra; Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.,
 
 C.A.3d (1970), 427 F.2d 1273, 1274-1275[1], [2]. Thus, the only ground the Court may consider on the defendant’s motion for a judgment notwithstanding the verdict relates to its contention that the issue of punitive damages should not have been submitted to the jury.
 

 This implicates, under one theory of the plaintiff, federal law and, under another, the law of Illinois, 28 U.S.C. § 1652. A review of his affirmative claims is required.
 

 The plaintiff claimed a right of recovery under (1) a private federal cause of action arising under 49 U.S.C. § 1374(b); (2) the Illinois tort-law arising from the wrongful ejection of its passenger by a carrier; and (3) the Illinois tort-law of the intentional infliction of mental distress (outrageous conduct). The Court directed a verdict for the defendant on the issue of punitive damages under the above claim (3) and, afterward, instructed the jury not to consider any remaining claim of the plaintiff if the jury had found earlier for him as to any one of (1), (2), or (3),
 
 supra.
 
 As the jury awarded the plaintiff punitive damages, it may be assumed safely that its finding for the plaintiff was predicated on the plaintiff’s theory (1) or (2),
 
 supra.
 

 As to the federal claim of the plaintiff, there was evidence from which the jury could have found directly or by reasonable inference that Mr. Sherrod, as a ticketed passenger, was refused discriminatorily passage by Piedmont on its aircraft at a time when others in the same situation were allowed transportation in contravention of the purposes of the Federal Aviation Act,
 
 Mason v. Belieu,
 
 C.A.D.C. (1976), 543 F.2d 215, 221, certiorari denied (1976), 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127, rehearing denied (1976), 429 U.S. 933, 97 S.Ct. 341, 50 L.Ed.2d 303, to vindicate which he had a private remedy,
 
 see
 
 Anno.: Aviation Act — Private Action, 41 A.L.R.Fed. 532, § 3[a] at 537-538. There was also evidence relating to this claim that Piedmont’s agents acted with evil motive and/or actual malice. Upon such a finding, an award of punitive damages was proper.
 
 Smith v. Piedmont Aviation, Inc.,
 
 C.A.5th (1978), 567 F.2d 290, 294[4];
 
 accord: Karp v. North Cent. Airlines, Inc.,
 
 D.C.Wis. (1977), 437 F.Supp. 87, 90-91[6], and
 
 Wills v. Trans World Airlines, Inc.,
 
 D.C.Cal. (1961), 200 F.Supp. 360, 366[5],
 

 Thus, it was appropriate under Mr. Sherrod’s federal claim for the issue of punitive damages to be submitted to the jury.
 

 In Illinois, punitive damages are awarded in the interest of society rather than solely as recompense for a plaintiff and are designed to punish the offender and discourage other offenses by a warning that the act(s) committed offend society.
 
 Mattyasovszky v. West Towns Bus Co.
 
 (1975), 61 Ill.2d 31, 35, 330 N.E.2d 509;
 
 First Natl Bank v. Amco Engineering Co.,
 
 C.A.Ill. (1975), 32 Ill.App.3d 451, 455(5), 335 N.E.2d 591. They are not favored and are to be allowed with caution and confined within narrow limits. 15 Ill.Law & Practice 440, Damages § 131.
 

 When the conduct complained of is accompanied by aggravating circumstances, singly or in combination, such as wilful, wanton, malicious, fraudulent, oppressive, violent or reckless conduct, punitive damages should be allowed.
 
 Ibid.,
 
 442-443, § 132;
 
 First Nat’l Bank v. Amco Engineering Co., supra,
 
 32 Ill.App.(3d) at 455(5), 335 N.E.2d 591. They should not be awarded for acts which, although intentional or wilful, were committed in good faith, under a mistake, and without any wilful or intentional intent to inflict an injury wrongfully. 15 Ill.Law & Practice at 442-443, § 132.
 

 To Illinois juries is committed large discretion in assessing exemplary damages, but such damages are required to bear some reasonable relationship to the motives and acts of the defendant and ordinarily to the injury which has been inflicted
 
 *53
 
 on the plaintiff.
 
 Ibid.,
 
 at 445, § 133. An application of these criteria convinces this Court that it acted properly in submitting the diversity issue of punitive damages to the jury herein.
 

 The prolonged hesitation of the Court in reaching this conclusion stemmed from the presence of the early case from the Supreme Court of
 
 Lake Shore & Michigan Southern R. Co.
 
 v.
 
 Prentice
 
 (1893), 147 U.S. 101, 106, 13 S.Ct. 261, 37 L.Ed. 97, 101. There, another professional person who was a passenger in Illinois was ejected forcibly by arrest from a common carrier by its personnel. There had been no claim by the plaintiff there, and no evidence reflecting, that the carrier’s employee was known to be an unsuitable person in any respect, that the carrier participated in any respect in the wrongful conduct of its employee, or that the carrier ratified its employee’s treatment of its passenger.
 
 Ibid.,
 
 147 U.S. at 117, 13 S.Ct. at 266, 37 L.Ed. at 104-105 (headnote 6). As a matter of general jurisprudence, the Supreme Court
 
 held
 
 that, under those similar circumstances, the carrier could not be
 
 charged
 
 with punitive damages.
 

 Prentice, supra,
 
 antedated
 
 Erie R. R. v. Thompkins
 
 (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, however; and, the Supreme Court of Illinois recently recognized that a carrier may be charged vicariously with punitive damages in Illinois, where its “ * * * ‘agent was employed in a managerial capacity and was acting in the scope of employment.’ * * * ”
 
 Mattyasovszky v. West Towns Bus Co., supra,
 
 61 Ill.2d at 36-37, 330 N.E.2d 509. There was evidence herein from which the jury might have found that, in the instant situation, at least, the defendant’s agents, Capt. Roy Brown and Ms. Ann Adams, were acting in managerial capacities in which they had been employed by it. Accordingly, the defendant’s motion for a judgment notwithstanding the verdict hereby is
 

 DENIED.
 

 The ground of the defendant’s alternative motion for a new trial is that “ * * * the excessiveness of the award of the jury is so great as to shock the conscience of any reasonable man and cannot be allowed to stand. * * * ” Undoubtedly: “* * * If the amount of damages awarded is excessive, it is the duty of the trial judge to require a remittitur or a new trial. * * * ”
 
 Linn v. United Plant Guard Workers
 
 (1966), 383 U.S. 53, 65-66, 86 S.Ct. 657, 664-65, 15 L.Ed.2d 582, 591[18],
 

 In Illinois, the “ * * * test to be used when examining a verdict challenged as being excessive is ‘whether or not the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience.’
 
 (Barango v. Hedstrom Coal Co.
 
 (1956), 12 Ill.App.2d 118, 138 N.E.2d 829, 838.) It is not believed that the propriety of a verdict can be determined from a comparison with verdicts awarded in other cases because each case must be considered on its own facts; the determination of the amount of damages is within the province of the jury. * * * [Citation omitted.] * * * It is the aim of the law to attain a reasonable balance between the amount awarded as damages and the extent of the injuries, and there is no precise rule by which an award of damages can be fixed in an action for personal injuries because such compensation does not lend itself to mathematical computation. * * * [Citation omitted.] * * * ”
 
 LeMaster v. Chicago Rock Island & Pacific Railroad Company,
 
 C.A.Ill. (1976), 35 Ill.App.3d 1001, 343 N.E.2d 65, 88[41], [42], [43], cited in
 
 Chapman v. Foggy,
 
 C.A.Ill. (1978), 59 Ill. App.3d 552, 16 Ill.Dec. 758, 764, 375 N.E.2d 865, 871[15].
 

 At the outset, the plaintiff characterized his diversity claim herein in terms of Piedmont’s breach of its contract of transportation with him. At the conclusion of the plaintiff’s proof, the Court granted the plaintiff’s motion to conform his pleadings to the proof. Rule 15(b), Federal Rules of Civil Procedure. Thus, the plaintiff’s diversity claim under that conformation order now rests in tort. “ * * * An action by a passenger to recover damages for a wrongful ejection [by a carrier] is properly
 
 *54
 
 brought in tort rather than in contract. * * * ” 7 Ill.Law & Practice 86, Carriers § 591, citing
 
 Cohen v. Cleveland, C. & St. L. Ry. Co.,
 
 C.A.Ill.App. (1915), 197 Ill.App. 88, and
 
 Boylan v. Hot Springs R. Co.
 
 (1889), 132 U.S. 146, 10 S.Ct. 50, 33 L.Ed. 290.
 

 Therefore, Mr. Sherrod was entitled to recover as his compensatory damages herein “ * * * such damages as he sustained because of the delay occasioned by the expulsion and all additional expense or other reasonable damage necessarily occasioned thereby. * * * ” 7 Ill.Law & Practice 97, Carriers § 598;
 
 Pennsylvania R. Co. v. Connell
 
 (1884), 112 Ill. 295, 305. This included, in addition to the actual pecuniary damage or loss suffered by him, “ * * * proper compensation for the annoyance, vexation, and risk incurred by him, as well as the wounded pride, humiliation, and indignity suffered. * * * ”
 
 Idem.; Wilson v. Cleveland, C., C. & St. L. Ry. Co.,
 
 C.A.Ill. (1927), 245 Ill.App. 72, 74;
 
 Cohen v. Cleveland, C. & St. L. Ry. Co., supra,
 
 197 Ill.App. at 92;
 
 Pennsylvania R. Co. v. Connell, supra,
 
 112 Ill. at 305.
 

 The purpose of awarding compensatory damages in Illinois is “ * * * to make the injured party whole, but not to enable him to make a profit on the transaction. * * * ” 15 Ill.Law & Practice 377, Damages § 31, citing
 
 Santiemmo v. Days Transfer, Inc.,
 
 C.A.Ill. (1956), 9 Ill.App.2d 487, 133 N.E.2d 539, and
 
 Bimba Mfg. Co. v. Starz Cylinder Co.,
 
 C.A.Ill. (1969), 119 Ill. App.2d 251, 256 N.E.2d 357. With reference to the plaintiff’s federal claim of compensatory damages, “ * * * the party injured may recover against the airline the damages he may have suffered, as well as compensation for the plain and blatant humiliation pressed upon him. * * * ”
 
 Flores v. Pan American World Airways,
 
 D.C.P.Rica, 259 F.Supp. 402, 404[4];
 
 accord: Wills v. Trans World Airlines, supra,
 
 200 F.Supp. at 366[5], and
 
 Smith v. Piedmont Aviation, Inc., supra,
 
 567 F.(2d) at 292[2].
 

 Mr. Sherrod was a fare-paying passenger in Chicago, Illinois upon the defendant’s commercial aircraft. He had in his possession before the scheduled departure of this flight, in the seat to which he was assigned, a partly-full can of beer. This was an alcoholic beverage, the container of which was open, and had not been served to the plaintiff by the defendant’s personnel. If Mr. Sherrod had drunk any of this beer then and there, this would have constituted a violation of requirements of the Federal Aviation Administration for flight operations, 14 C.F.R. § 121.575(a);
 
 [1]
 
 and the defendant was required to report any refusal of a passenger to’ comply with the provisions of 14 C.F.R. § 121.575(a) to the Federal Aviation Administrator “ * * * within five days after the incident, * * * ” 14 C.F.R. § 121.575(d).
 
 [2]
 

 Ostensibly to assure that Mr. Sherrod would not drink any of this beer aboard the aircraft, the defendant’s attendant on that flight, Ms. Ann Adams, instructed him to dispose of the can of beer. When Mr. Sherrod did not make such disposition forthwith but sought to discuss the matter with her, Ms. Adams jerked the container from his hand and threw it into a nearby trash-receptacle. Thereafter, Ms. Adams was
 
 “ * * *
 
 obviously angry * * * ”, in the words of one witness, hostile, agitated and scowling disagreeably at Mr. Sherrod, in the words of another.
 

 Moments afterward, Ms. Adams began taking the order of another passenger who was seated on the same row 2 seats removed from Mr. Sherrod on the aircraft.
 
 *55
 
 She failed pointedly to provide Mr. Sherrod and his female traveling companion, who was seated between him and the first-ordering passenger, an opportunity to order also. In the light of this omission, Mr. Sherrod inquired of Ms. Adams, — lightly, but probably sarcastically, — whether “ * * * they call you ‘Smiley’.” This inquiry appeared to other of the defendant’s passengers to offend and infuriate Ms. Adams, who then spoke resentfully in a loud voice and expressed her determination to cause Mr. Sherrod’s ejection from the aircraft.
 

 Ms. Adams reported her version of the events which had transpired involving Mr. Sherrod to the defendant’s station-agent who was aboard; he declined to remove Mr. Sherrod from the airplane. Thereupon, Ms. Adams appealed to the captain (chief pilot) of the aircraft, Mr. Roy Brown, and, after investigating and declining to “ * * * listen to * * * ” other passengers nearby, he summoned the security police (who, apparently, were or summoned officers of the Chicago Police Department). The officers who responded also declined to eject Mr. Sherrod forcibly from the aircraft in the absence of the issuance and service upon him of a criminal warrant.
 

 Mr. Sherrod and the other fare-paying passengers aboard the defendant’s airplane remained in their seats for more than one hour until the police obtained and served upon Mr. Sherrod a warrant for his arrest on a charge of disorderly conduct. Mr. Brown admitted that his purpose in causing the warrant to be issued was to “ * * * get him [Mr. Sherrod] off the plane * * * ” and testified he “ * * * thought * * * ” the charge he had supported with his affidavit was disturbing the peace. After Mr. Sherrod was placed under arrest, he borrowed $1,000 from a friend, who was also a passenger, and he and his companion departed the scene.
 

 Mr. Sherrod was placed in jail after thus being ejected forcibly from the defendant’s aircraft and remained in a cell for some two hours and until he was enlarged by the posting of bail for his appearance judicially. After his release, Mr. Sherrod and his companion went to dinner, but he was so upset concerning what had happened to him that he was unable to ingest the food served him. He obtained hotel accommodations and resumed his journey to his home in Johnson City, Tennessee without incident the next morning aboard another Piedmont aircraft.
 

 The damages Mr. Sherrod sustained because of the delay occasioned by his expulsion from this airplane and additional expense occasioned thereby aggregated slightly less than $1,000. It is inferrable reasonably, therefore, that $99,000 was proper compensation awarded to him by the jury for the annoyance, vexation, and risk incurred by him, as well as the wound to his pride, his humiliation, and the indignity he suffered.
 

 He had never been arrested previously; yet he was placed in a jail-cell designed for use simultaneously by multiple prisoners and, although no other prisoner was incarcerated with him during his sojourn in it, he was subjected potentially to some risk. Mr. Sherrod is a gentle-appearing person and testified to his extreme annoyance and vexation resulting from the aggregate of this mistreatment of him. The jury could well have found from his demeanor long afterward on the witness-stand considerable wounding of his pride and continuing feelings of humiliation and loss of personal and professional dignity. His ejection from the defendant’s conveyance was in the presence of a female and a male friend (and fellow-lawyer) as well as persons who lived or were employed in skilled positions in the general area of his residence. He was degraded and humiliated in the eyes of his children who were reduced to tears because they were teased at school over this incident.
 

 The evidence adduced on the trial from other passengers provided support for Mr. Sherrod’s contention that, after the removal from him of the can of beer, his conduct in no way justified his being ejected forcibly by the defendant, by arrest or otherwise. It is undisputed that the plaintiff’s net earnings from his profession approximate a
 
 *56
 
 net amount of $60,000 annually. It is patent that real compensation for real injury which is considerable in amount, — worth having, — depends to some extent upon the fiscal status and standard-of-living of the person injured. To assess an amount to make the plaintiff “whole” and yet not permit him to “profit on the transaction,” is a delicate task. Albeit, such constitutes the responsibility of this Court; and, a remittitur of $79,000 in compensatory damages is suggested.
 

 This is deemed congruous with the standard delineated for compensatory damages under Mr. Sherrod’s federal claim. However, that matter is not entirely free of doubt: $1,000 appears to be the highest award of compensatory damages in similar circumstances.
 
 Mason v. Belieu, supra.
 
 Nonetheless, this Court is of the opinion that the potential risk incurred by Mr. Sherrod and the wounds to his pride, the blatant humiliation to which he was subjected, and the indignity he suffered justified an award of $20,000 above his special damages.
 

 There is greater guidance for this Court from the Illinois courts in its consideration of any excessiveness of the jury’s award of punitive damages herein. There was evidence in the record justifying such an award, and the net worth of the defendant Piedmont Aviation, Inc. at the time of trial was $59,000,000. However, liability could be imposed upon Piedmont under that evidence only vicariously.
 

 The punitive and admonitory justifications for the imposition of punitive damages in Illinois “ * * * are sharply diminished in those cases in which liability is imposed vicariously. * * * ”
 
 Mattyasovszky v. West Towns Bus Co., supra,
 
 61 Ill.(2d) at 36, 330 N.E.2d 509. A survey reveals that the maximum which has been awarded in similar circumstances on the federal claim is the sum of $25,000, see
 
 Nadar v. Allegheny Airlines, Inc.,
 
 D.C.D.C. (1973), 365 F.Supp. 128, 134[9], award reversed because of erroneous legal conclusions otherwise C.A.D.C. (1975), 512 F.(2d) 527, 551[3], reversed on other grounds (1976), 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.(2d) 643. In other analogous situations, awards have ranged from $2,000 in punitive damages,
 
 Karp v. North Cent. Airlines, Inc., supra,
 
 to $5,000 in
 
 Wills v. Trans World Airlines, Inc., supra.
 
 The amount of damages awarded in similar situations is a factor which is to be considered when viewing a federal claim.
 
 Tullos v. Corley,
 
 C.A.6th (1964), 337 F.2d 884, 887[3],
 

 Nevertheless, the jury was expected to award the plaintiff in punitive damages an amount sufficient to “ * * * deter others from the commission of like offenses.” Illinois Pattern Jury Instructions 35.01. Applying these rules, the Court is of the opinion that $15,000 would have been sufficient to punish the defendant and deter other common carriers from offending society by committing a like offense. Accordingly, it hereby is
 

 ORDERED that a new trial on the issue of the compensatory damages of the plaintiff Mr. Sherrod will be granted unless within 30 days herefrom he shall produce and file in the office of the clerk of this Court a remittitur of $79,000 in the compensatory damages awarded him by the jury herein, and that a new trial on the issue of the punitive damages of the plaintiff will be granted unless within that time he shall produce and file at the same place a remittitur of $85,000 in the punitive damages awarded him by the jury herein.
 
 [3]
 
 In case of such remittitur of compensatory damages, the defendant’s motion for a new trial on the ground of the excessiveness of the verdict is denied as to compensatory damages and granted as to punitive damages; in case of such remittitur of punitive damages, the defendant’s motion for a new trial on the ground of excessiveness of the verdict is denied as to punitive damages and granted as to compensatory damages.
 

 [1]
 

 . The objection was actually on the ground of immateriality. This, however, does not appear to be recognized by the Federal Rules of Evidence as a ground for excluding evidence.
 

 [2]
 

 . For an example of the application of an exception to such rule see
 
 Prichard v.
 
 Conley, D.C.Tenn. (1969), 48 F.R.D. 138, 140[5], where evidence was admitted showing that the defendant had pleaded guilty to a charge of driving a motor vehicle while intoxicated, and it was contended by the plaintiff that the defendant was guilty of statutory negligence, by violating T.C.A. § 59-1031 (proscribing the driving of motor vehicles by intoxicated persons).
 

 *
 

 Although the plaintiff characterized his claim hereunder in terms of Piedmont’s breach of contract of transportation, the Illinois authorities appear to treat this as a special cause of action more akin to a tort, than a contract, theory.
 

 [1]
 

 . “ * * * No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft [the defendant herein] has served that beverage to him.” 14 C.F.R. § 121.575(a).
 

 [2]
 

 . “ * * * Each certificate holder shall, within five days after the incident [of a passenger’s drinking an alcoholic beverage aboard its aircraft which had not been served to him by such certificate holder], report to the Administrator the refusal of any person to comply with paragraph (a) of this section. * * * ” 14 C.F.R. § 121.575(d).
 

 Such a report was made to such administrator by the defendant and, after an investigation, Mr. Sherrod was advised that it “ * * * failed to substantiate a violation, * * * ” and that the matter was closed without further action.
 

 [3]
 

 . The Court FINDS and CONCLUDES from the entire record that the respective issues of liability, on the one hand, and damages, on the other, are so distinct and separable in the matter
 
 sub judice
 
 that a new trial may be had as to damages only, if necessary, without the risk of injury to either party. See
 
 Dean v. Mitchum-Thayer, Inc.,
 
 D.C.Tenn. (1978), 450 F.Supp. 1.