STACEY CHAPMAN, a Minor, by Joseph Chapman, Jr., her Father and Next Friend, Plaintiff-Appellee, *v.* MATTHEW FOGGY, d/b/a Martin Luther King Memorial Skating Rink, Defendant-Appellant.

Fifth District    No. 77-142

Opinion filed April 4, 1978.

Richard G. Younge, of East St. Louis, for appellant.

Robert J. Hillebrand, of East St. Louis, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal by defendant Matthew Foggy, owner and operator of the Martin Luther King Memorial Roller Skating Rink, from a judgment of the circuit court of St. Clair County entered on a jury verdict in the amount of $5,000 in favor of minor plaintiff Stacey Chapman for injuries allegedly received by her while a patron at the defendant's skating rink.

The following issues are presented on appeal: (1) whether the trial court erred in denying defendant's motion for directed verdict; (2) whether the court properly granted plaintiff's oral motion for admission of facts; (3) whether the court erred in submitting the case to the jury in the absence of expert medical testimony concerning plaintiff's injury; (4) whether the jury was properly instructed; and (5) whether the verdict was excessive.

The skating surface of defendant's rink is polished concrete. Since 1971 or 1972 there has been a restraining wall, approximately 3½ feet tall, around most of the perimeter of the rink. This wall separates the skating area from nonskating areas. At the top of this wall is a wooden railing, painted black.

On Sunday, February 2, 1975, plaintiff Stacey Chapman attended the afternoon session at defendant's rink in the company of her brother Cedric and a friend, Carla Harris.

Midway through the session, at approximately 3:30 p.m., Stacey and Carla endeavored to leave the skating surface in order to reach the seating area. Stacey was in the lead as they approached an opening in the railing which was obstructed by patrons milling therein. According to the testimony of both Stacey and Carla, they were forced to stop to allow the crowd to clear. As Stacey skated slowly, coming to a stop, she placed her right arm upon the black painted rail. She felt something go into her forearm.

Upon reaching the seating area, Stacey told Carla and Cedric that she had something sticking out of her arm. This "something," according to the testimony of all three, was a black splinter. She asked her brother to take

it out. He pulled on it and as much as was visible did come out. Stacey thereafter continued skating until the session was finished.

Upon returning home, Stacey told her parents that she had gotten a splinter in her arm while at the skating rink. Since no splinter was visible and Stacey was not in great pain, they did not seek medical attention at that time. However, when Stacey came home from school the following day, February 3, her arm was swollen and red. The Chapmans then took Stacey to Christian Welfare Hospital. Her arm was X-rayed, but no attempt was made to remove any object from the arm.

The following day, Stacey and her parents went to Cardinal Glennon Hospital. It is unclear whether an X-ray was made there, but both parents agreed that a staff doctor operated on her arm, removing a black splinter, 2½ inches in length.

Joseph Chapman, Jr., Stacey's father, testified that no stitches were put in the incision after the splinter was removed. He took Stacey back to the hospital on three or four occasions in order to have the wound cleaned, examined and dressed.

A photograph depicting the highly visible scar left by the operation was admitted at trial. In addition, plaintiff exhibited her scar to the jurors. Prior to this time, Stacey's arm was free from scars or cuts.

Defendant Foggy contends first that the court erred in denying his motion for directed verdict, made at the close of plaintiff's case. He argues that an essential element of this negligence case was missing in that there was no evidence presented from which notice of the dangerous condition of his railing could be imputed to him.

■■ While it is true that an owner of a business premises is not an insurer of the safety of patrons on his premises (*Dunlap v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 327 N.E.2d 16), he nevertheless has a duty toward them to exercise ordinary care in maintaining the premises in a reasonably safe condition (*Saviola v. Sears, Roebuck & Co.*, 88 Ill. App. 2d 13, 232 N.E.2d 4; *Dunlap v. Marshall Field & Co.*). See 24 A.L.R.3d 911, §5(a) (1969) (skating rink owner or operator's duty to maintain premises extends to auxillary parts of the premises).

More specifically, he has a duty to exercise reasonable care to discover defects or dangerous conditions existing on the premises (*McGourty v. Chiapetti*, 38 Ill. App. 2d 165, 186 N.E.2d 102; *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 343 N.E.2d 465) and to either correct them or give sufficient warning to his customers to enable them to avoid harm (*Perminas v. Montgomery Ward & Co.*, 60 Ill. 2d 469, 328 N.E.2d 290; *Beccue v. Rockford Park District*, 94 Ill. App. 2d 179, 236 N.E.2d 105).

■■ Proof that the owner had actual knowledge of the dangerous condition is not a prerequisite to his liability for injury to his invitee.

(*Maytnier v. Rush*, 80 Ill. App. 2d 336, 225 N.E.2d 83.) The owner may be found liable if by the exercise of reasonable care he could have discovered the dangerous condition. *Genaust v. Illinois Power Co.; McGourty v. Chiapetti; Guenther v. Hawthorn Mellody, Inc.*, 27 Ill. App. 3d 214, 326 N.E.2d 533; see Restatement (Second) of Torts §343 (1965).

Generally, if plaintiff is relying on proof of constructive notice, he must establish that the defect or condition existed for a sufficient amount of time so that defendant should have discovered such defect by the exercise of reasonable care. Of course, it is in the province of the trier of fact to determine if such notice has been established. *Guenther v. Hawthorn Mellody, Inc.*

In order for defendant to be entitled to a directed verdict at the close of plaintiff's case, all of plaintiff's evidence, viewed in the light most favorable to her, must so overwhelmingly favor defendant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) In other words, a directed verdict would have been proper only if the evidence would not support a finding that defendant could have discovered the dangerous condition of the railing in the exercise of reasonable care.

■■ After examining all of the evidence presented on behalf of the plaintiff, we are of the opinion that the court properly denied defendant's motion for directed verdict.

Evidence adduced during the examination of defendant Foggy pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), would support an inference that he had particular reason to be aware that any abnormal condition existing in the railing, such as splintering, would present an unreasonable likelihood of injury to some of his patrons. He estimated in his testimony that 60% of his customers were children between the ages of six and 16. In addition, he stated that he was aware that children who cannot skate well stop against the rail, using it to steady themselves when stopping, standing inside the wall, or moving along the side of the skating area. Faced with such knowledge, a man exercising ordinary care could undoubtedly realize that the railing was a portion of the premises which would require constant inspection in order to insure that the premises were reasonably safe. Moreover, there was evidence that the railing had been in a splintering condition for a period of time prior to the instant occurrence. Carla Harris testified that there were splinters sticking out of the rail. She had seen these splinters prior to this incident, and on one occasion had herself picked up one of them while at the rink. She stated also that the railing would snag one's clothes. Since such a condition would be relatively obvious to one examining the railing and the evidence suggests that it had existed for some time, sufficient evidence was present to support a finding of negligence on the part of defendant.

We note that if the jury believed that this splintering condition had existed for some time, as it apparently did, there was more evidence presented during defendant's case which would support a finding of notice, either presumed or actual. Defendant's manager, Frank Rogers, testified that after each session an employee would wash the rail. Defendant agreed that this procedure was mandatory. In addition, Frank Rogers admitted that sometimes a child would grab the rail to help stop himself and that he has seen many children touch the rails, especially when coming on and off the floor.

Defendant next contends that reversible error was committed when the court, prior to the empanelling of a jury, granted an oral motion of the plaintiff and held that certain facts requested for admission by plaintiff were admitted because of defendant's failure to respond as required under Supreme Court Rule 216(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 216(c)).

■■■ This contention is without merit. From defendant's citation of authority, it is apparent that he has misconstrued the basis for the court's ruling. He has cited two decisions to this court both of which deal with sanction orders imposed under Supreme Court Rule 219(c) for unreasonable refusals to comply with discovery provisions. The instant order, however, was not entered on the authority of that rule but rather by operation of Rule 216(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 216(c)), dealing with requests for admission of facts. Moreover, one of the cases cited by defendant was published in abstract form only. Since defendant has not supplied this court with a copy of its text, we need not consider it. See Uniform Appellate Rule 8, Ill. Rev. Stat. 1975, ch. 110A, par. 908; *Cahokia Sportservice, Inc. v. Illinois Liquor Control Com.*, 32 Ill. App. 3d 801, 336 N.E.2d 276.

We believe that on the facts presented here the trial court properly held the requested matters admitted. Supreme Court Rule 216(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 216(c)) states in pertinent part:

> "Each of the matters of fact * * * of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission * * * (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters * * *."

The record supports the trial court's finding that all three of the requisite actions necessary for a party to avoid admission of the requested facts were lacking here.

Plaintiff's request for admission was filed with proof of service on May 26, 1976. Twenty-eight days from such date was June 23, 1976; however, no response to the request was filed by defendant until July 15, 1976.

Moreover, the statement in response was not sworn to as required by the rule or, in fact, signed by anyone. In addition, the plaintiff stated to the court that he was not served with the defendant's statement and the fact that no proof of service appears on defendant's document supports that assertion.

Defendant has wholly failed to conform his response to the framework provided by Rule 216(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 216(c)); accordingly, the matters of fact were properly admitted. *Banks v. United Insurance Co. of America*, 28 Ill. App. 3d 60, 328 N.E.2d 167.

■■ Defendant next contends that the testimony of a physician was positively required in order to support an award of damages by the jury.

We cannot agree. There is no requirement that a plaintiff produce medical testimony where he clearly testifies to his injuries and the medical treatment he received. (*Turner v. City of Chicago*, 95 Ill. App. 2d 38, 238 N.E.2d 100; *Wiacek v. Hospital Service Corp.*, 15 Ill. App. 3d 698, 304 N.E.2d 730.) The law does not require that plaintiffs in every personal injury case produce a doctor to testify as to injuries alleged to have been sustained. It is customary for plaintiffs in injury cases to testify as to injuries they claim they received. *Hyatt v. Cox*, 57 Ill. App. 2d 293, 206 N.E.2d 260; *Palmer v. De Filippis*, 321 Ill. App. 186, 53 N.E.2d 34; *Hiatt v. Finkl*, 132 Ill. App. 2d 92, 265 N.E.2d 690.

The testimony here did not require an opinion calling for specialized, scientific, or medical expertise. The plaintiff and her witnesses related plainly how she received the injury and what medical treatment was received as a consequence of it. The injury complained of was not remote in time from the accident, nor was it shrouded in controversy as to origin. Lay testimony was therefore sufficient to establish the causal relationship. See *Hyatt v. Cox.*

Plaintiff was admittedly seeking compensation primarily for the scar left by the removal of the splinter. This scar was shown to the jury and a photographic exhibit of it was admitted for the jury's consideration. The jury was properly equipped to determine what damages were proper without expert medical testimony.

■■ Defendant next contends that the jury was not properly instructed. This contention is purportedly based on the trial court's refusal of defendant's instruction number four. Defendant argues that this refusal erroneously took from the jury the right to believe that the plaintiff's doctor's testimony, if given, would have been adverse to plaintiff.

First, we note that defendant's instruction number four was given at trial. We assume that defendant's argument refers to a similar instruction, defendant's instruction number one, which was refused.

The refused instruction is a modified version of Illinois Pattern Jury

Instructions, Civil, No. 5.01 (2d ed. 1971). IPI Civil No. 5.01 is entitled "Failure to Produce Evidence *or* a Witness." (Emphasis added.) Defendant's instruction one was phrased so as to cover the failure to produce *both* a witness and to offer evidence.

Since defendant's instruction four, which was given, covered the failure to offer evidence, the only purpose which could have been served by giving the instant instruction was to raise the presumption that the testimony of a witness which plaintiff did not produce would have been unfavorable to her. The witness to whom this presumption was meant to apply was apparently the physician who operated on Stacey at Cardinal Glennon Hospital.

Basically IPI Civil No. 5.01 enumerates what circumstances must be present to warrant the presumption that the evidence which a party fails to produce would be unfavorable to him. The most crucial of the four stated circumstances are:

"1. The [witness] was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The [witness] was not equally available to an adverse party."

From the record made of objections to instructions, it appears that defendant's instruction was refused after plaintiff objected that there was no indication that any witness was not equally available to both sides or under her control.

We find that the trial court properly refused this instruction. To the extent that this instruction referred to the offer of evidence it was clearly duplicative of instruction four. In addition, there was no reason whatsoever to believe that the doctor was not "equally available" to defendant. Although it is true that a witness is not considered "equally available" to a party if there is a likelihood that the witness would be biased against him, as for example a relative or an employee of the other party (See IPI Civil No. 5.01, Comment, at 42) there is no likelihood here that the staff doctor from a St. Louis hospital would be biased in favor of plaintiff. The doctor was certainly not a relative or employee of plaintiff and would have no reason to develop a bias against defendant as a result of rendering professional services to plaintiff on this one occasion.

Defendant's final contention, made without benefit of support by any authority, is that the verdict of $5,000 "was based on sympathy and capriciousness and should be reversed."

The amount of a personal injury verdict is largely discretionary with the jury. (*Kupcikevicius v. Fitzgibbons*, 41 Ill. App. 3d 405, 354 N.E.2d 434.) Consequently, the test of whether a jury verdict is excessive is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial

conscience. *Carraher v. Bacon,* 43 Ill. App. 3d 16, 356 N.E.2d 650; *LeMaster v. Chicago Rock Island & Pacific R.R. Co.,* 35 Ill. App. 3d 1001, 343 N.E.2d 65.

■■ After due consideration, we find that the instant award was within the proper limits of compensation. The jury was in a superior position to determine the appearance of the scar upon plaintiff's forearm, but the photographic exhibit in this record does reveal that the scar is substantial in proportion. In all likelihood it is also permanent in nature. The scar will be readily visible when plaintiff is garbed in the customary manner of a young woman. The jury could well believe that this disfigurement might be a source of embarrassment and consternation to plaintiff. In view of these considerations, an award of $5,000 is not unwarranted.

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

EBERSPACHER, P. J., and KARNS, J., concur.