MARY G. BLUME, *et al.*, Plaintiffs-Appellants, *v.* EVANS FUR COMPANY, Defendant-Appellee.

Second District No. 2—83—0761

Opinion filed July 27, 1984.

Karen J. Johnson, of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin, for appellants.

David B. McAfee, Victor J. Cassato, and George D. Gardner, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Whether a limitation of liability in a contract of bailment is binding upon an insurer who is not a party to the contract, is the principal question in this appeal.

The Evans Fur Company (Evans) stored a black mink coat owned by Mary G. Blume (Blume) and subsequently lost it. The "fur-call" receipt issued by Evans to Blume and signed by her stated the value of the coat at $300 and in a further provision limited Evans' liability "for any reason whatsoever" to $100 "except as otherwise specifically provided." Blume testified that the clerk at Evans who handled the transaction knew that she carried her own insurance. The same clerk had previously appraised the coat at her request for insurance purposes at $4,296.

Blume was paid $300 by Evans. She claimed and received payment of $3,131 from her insurance carrier, Allstate Insurance Company (Allstate). Allstate then notified Evans of its subrogation claim. Evans' insurance carrier denied liability exceeding $300. Allstate, claiming as Blume's subrogee, and Blume filed a complaint against Evans. Evans filed a motion for summary judgment alleging that a valuation of $300 had been placed on the coat when the agreement form had been made out and thereafter signed by Blume. The circuit court granted Evans' motion for summary judgment, finding that the delivery of the coat created a bailment, that Blume's conduct limited the liability of the bailee to the sum of $300, that Allstate stands in the same stead as its insured subrogee, and therefore its limit of liability is established at $300.

I

Blume and Allstate argue first that a bailee for hire, as a matter of public policy, may not unreasonably limit its liability for the loss or destruction of the bailed property resulting from its negligence. The authority it cites, *O'Callaghan v. Waller & Beckwith Realty Co.* (1958), 15 Ill. 2d 436, does not support the argument. In *O'Callaghan,* an exculpatory clause in a lease was upheld for the stated reason that "the relation of lessor and lessee has been considered a matter of private concern." (15 Ill. 2d 436, 438-39.) The supreme court distinguished the contract from other relationships which have monopolistic characteristics, as, for example, those of common carriers and tele-

graph companies, with compelling considerations of "obvious public interest *** coupled with the dominant position of those seeking exculpation." (*O'Callaghan v. Waller & Beckwith Realty Co.* (1958), 15 Ill. 2d 436, 438; see also *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill. 2d 68, 71-74.) In this case no matter of obvious public interest coupled with a dominant position of the party seeking exculpation is involved.

■ A bailment is a contractual relationship in which the parties may limit liability, "provided the contract was not in violation of law or public policy." (*Schaefer v. Washington Safety Deposit Co.* (1917), 281 Ill. 43, 50.) In *Schoen v. Wallace* (1948), 334 Ill. App. 294, on facts essentially similar to those here presented, Mrs. Schoen's mink coat valued at $3,500 was left with Wallace, a furrier, for storage and later was lost. The bailment contract limited the loss to $100. The agreement was upheld over the contention that the result would encourage furriers to convert furs left for storage or to exercise minimum care in storing them. The court stated:

> "It was a private transaction in which the public is in no way concerned. Nor is it a matter of public interest whether the loss shall be borne by the plaintiff's insurer or by the defendant." 334 Ill. App. 294, 297.

■ We conclude that the limitation of liability in the bailment agreement was binding and enforceable.

## II

Allstate's further argument that an insurer should not be bound by contractual limitations entered into by its insured with knowledge that the insured item is of greater value must also be rejected.

■ A subrogee has no greater rights than the subrogor and can enforce only the rights of the subrogor. (*McCormick v. Zander Reum Co.* (1962), 25 Ill. 2d 241, 244; *Dworak v. Tempel* (1959), 17 Ill. 2d 181, 189.) Our conclusion that Evans could limit its liability to Blume to $300 similarly limits Allstate's subrogation rights.

■ Allstate relies on *Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210, for the proposition that an unlimited release executed by an insured subrogor which does not specifically include the amount of the insurer's subrogation interest does not bar a subsequent action by the insurer against the tortfeasor where the release is procured with knowledge of the subrogor's interest. (*Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210, 215; see also *Country Mutual Insurance Co. v. Transit Casualty Co.* (1978), 59 Ill. App. 3d 283, 285.) In both cases the releases were executed subsequent to the loss and

thus impaired the right of the subrogee to recover against the tortfeasor. Under general subrogation principles, the subrogor's loss is a prerequisite to the accrual of subrogation rights (*Dworak v. Tempel* (1959), 17 Ill. 2d 181, 189), and the subrogor's rights do not accrue until the subrogee has paid the debt. (*Village of Crainville v. Argonaut Insurance Co.* (1980), 81 Ill. 2d 399, 403.) Thus, the principles of the *Home* ruling are inapplicable under the circumstances of this case, in which the limitation of liability, which we have found to have been legally entered into, prevented any additional subrogation rights from coming into being.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.