CRELLA MAGEE, Plaintiff-Appellant, v. WALBRO, INC., *et al.,* Defendants-Appellees.

First District (1st Division)   No. 87—1941

Opinion filed June 6, 1988.—Rehearing denied June 16, 1988.

Walter M. Ketchum, Ltd., of Chicago (Nancy M. Rundin, of counsel), for appellant.

Law Offices of Gary S. Tucker, of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Crella Magee appeals from a judgment in favor of defendants Walbro, Inc., and Mysel Furs after a bench trial for breach of bailment and conversion of one blue fox fur jacket. For the reasons below, we reverse and remand.

Walbro, Inc., doing business as Mysel Furs (referred to collectively hereinafter as Mysel's), was in the business of storing furs, and in May 1982 solicited Mrs. Crella Magee's business to store her furs for the summer of 1982. Mrs. Magee agreed. United Parcel Service (UPS) provided the service of picking up furs from the customers and delivering them to Mysel's.

Mysel's and UPS used the following procedure to record the transit of furs: Mysel's prepared a list telling UPS how many furs to pick up from each customer. For each fur, Mysel's gave UPS a box with a unique call number. A ticket with a number matching the call

number was given to the customer when UPS picked up the fur. The UPS driver maintained a log sheet that listed the boxes by call number. When the boxes were delivered to Mysel's, a Mysel's employee signed the UPS log sheet to verify delivery of the boxes. When the boxes were delivered in the instant case, Mysel's did not inspect the boxes to see if they were empty. Once the boxes were in the possession of Mysel's, the furs were placed in a locked, alarmed vault to which several Mysel's employees had access. Mysel's then prepared a storage receipt and issued it to the customer. On May 25, 1982, UPS, upon Mysel's order to pick up three furs, delivered and picked up three UPS boxes from Mrs. Magee's home. The UPS driver gave three tickets to Mrs. Magee's husband, who was there at the time. Mr. Magee later testified that a blue fox fur jacket was in one of the boxes. In July, some six weeks after the furs were picked up, Mysel's issued to Mrs. Magee a storage receipt that listed just two furs. Mrs. Magee called Mysel's immediately, and received assurances that the furs were in storage. In October 1982, however, when Mrs. Magee went to pick up the furs, the blue fox jacket was missing.

Lorita Erenberg, a Mysel's employee who would later testify to Mysel's procedures, called in a tracer to UPS, which subsequently indicated that three cartons were delivered to Mysel's on May 26, 1982. The call numbers of the three cartons matched the tickets that had been given to Magee's husband. At trial an investigator for UPS testified that it was unlikely an empty box was delivered, because empty boxes would have been returned to Mysel's as empty, and no ticket would have been issued. Stuart Walowitz, a corporate officer of Mysel whose duties included the storage department at Mysel's, testified that he would have known immediately if an empty box had been delivered. Further, an empty box in UPS' sorting system would have been brought to the attention of a supervisor. Mysel's made no claim to UPS for the lost jacket and stated to Mrs. Magee that its liability for lost articles was limited to $100.

Mrs. Magee brought action against Walbro, Mysel, and UPS, alleging breach of bailment and conversion against all three defendants, and negligence against Walbro and Mysel for negligent shipping and handling of the jacket, and negligence against Walbro and Mysel for failure to submit a written claim to UPS. The negligence claims are not raised on appeal.

On July 28, 1986, a request for admission of fact pursuant to Rule 216 of the supreme court rules (107 Ill. 2d R. 216) was served upon Walbro and Mysel. The request included a request to admit that the value of the jacket at the time it was lost was $3,400. The

defendants made no response to the request. On November 24, 1986, shortly before the bench trial began, the trial court allowed counsel for Walbro and Mysel to respond orally. Counsel stated, "Not having seen the jacket, we can neither admit nor deny the value of the jacket."

At trial Walbro and Mysel argued that the jacket was not delivered, and alternatively, that Mrs. Magee could prove neither ownership nor value of the jacket, facts necessary for recovery. Mrs. Magee testified that she bought the jacket on sale for $2,600 from Evans' Furs, and that the regular price of the jacket was $3,400. Mrs. Magee also testified that she had insured the jacket for $3,400, which, in her opinion, was its value. Evans' Furs, however, showed no record of having made the sale. Mrs. Magee also sought to produce the insurance rider for the jacket, as proof of value and ownership. The rider was not admitted into evidence, however, by the trial court.

After testimony was heard, the trial court ruled in favor of the defendants. The trial court found that there had been a bailment between Magee and UPS, but that UPS had extinguished its liability upon delivery to Mysel. UPS was subsequently voluntarily dismissed. The court also found a bailment between Magee and Walbro and Mysel, but ruled that Magee had proven neither that she owned the lost jacket, nor its value.

Magee filed a post-trial motion requesting alternatively that the trial court vacate the judgment for the defendants as against the manifest weight of the evidence, or for a new trial due to prejudicial errors. The trial court denied both motions, and Magee filed the instant appeal.

Magee's argument on appeal that the trial court erroneously required her to prove ownership to establish a bailment misapprehends the rulings of the trial court. The trial court found that a bailment existed between Magee and all the defendants, but that Magee proved neither ownership of the lost jacket nor damages. Proof of ownership, necessary to establish conversion, is unnecessary to establish a bailment, and the record does not show that the trial court required such proof for the bailment. Thus, the judgment for defendants was on the trial court's finding that Magee had not proven damages.

We agree that the bailment was breached, but hold that damages were established in the amount of $3,400 by a request for admission of fact pursuant to Supreme Court Rule 216 (107 Ill. 2d R. 216). The trial court erred by allowing a response denying knowledge of the

value of the jacket, which in no way conformed to the statutory requirements of Rule 216.

■■■■ Establishing a *prima facie* case of bailment raises a presumption of negligence by the defendant (*Allis-Chalmers Corp. v. Pekin Foundry & Manufacturing Co.* (1975), 31 Ill. App. 3d 1005, 335 N.E.2d 97), which the defendant must rebut with evidence "sufficient to support a finding of the nonexistence of the presumed fact" (*Wright v. Autohaus Fortense, Inc.* (1984), 129 Ill. App. 3d 422, 425, 472 N.E.2d 593). In the instant case, the trial court ruled that the evidence established a bailment between Magee and defendants Walbro and Mysel, thus raising the presumption of negligence. Walbro and Mysel produced no evidence, however, to rebut the presumption of negligence. Instead, they attacked Magee's assertion of ownership, a fact irrelevant to bailment, and maintained that Mysel's never received the fur jacket.

The evidence shows that a fur jacket was delivered to Mysel's. Mysel's accounted for each carton that was given to UPS. UPS gave customers one ticket for each carton and did not issue a ticket for an unused carton. When UPS delivered the cartons to Mysel's, a Mysel's employee signed the UPS log sheet to verify delivery of the boxes, and any empty cartons were returned with a reason for this nonuse. Thomas Bellino, a loss prevention investigator for UPS, testified that an empty box in the UPS sorting system was unlikely because UPS employees were instructed to report empty boxes to a supervisor and rewards were offered to employees with knowledge of a theft. Bellino also testified that Magee's boxes were handled by nine employees. Although counsel for Walbro and Mysel stated in oral argument that "at no time did [defendants] indicate they received three furs," counsel's statement overlooks that fact that in July 1982, when Mrs. Magee received the receipt showing only two furs and made inquiry, she received assurances from Mysel's that the third fur was safely in storage. Based on the evidence presented, the trial court ruled that the lost jacket was delivered to Mysel Furs.

Walbro and Mysel also argued that, assuming delivery of the jacket, any presumption of negligence was defeated by the procedures used in storing furs. The furs were then placed in a locked, alarmed vault to which several identifiable Mysel's employees had access. Mysel's then prepared and issued a storage receipt to the customer. Walbro presented no evidence to show that these procedures were followed for Mrs. Magee's furs, and the storage receipt was not issued until six weeks after the jacket was delivered. It is reasonable to assume that the defendants' procedures and security precautions

customarily resulted in the return of the customer's fur. Mrs. Magee's fur was not returned; therefore, without showing more than the mere existence of safety and security measures, the defendants failed to rebut the presumption of negligence. Mrs. Magee was therefore entitled to recover her damages.

■ To prove her damages at trial, Mrs. Magee gave opinion testimony concerning the value of the jacket at the time of its loss and offered an insurance rider covering the jacket. The trial court disregarded Mrs. Magee's testimony, however, and refused to admit the insurance rider. Although the owner of an article of clothing may testify to the value of the clothing (see *Martin v. McIntosh* (1976), 37 Ill. App. 3d 526, 346 N.E.2d 450), the weight given to such testimony remains within the sound discretion of the trial court. In disregarding Mrs. Magee's testimony and refusing to admit Magee's insurance rider, the court did not abuse its discretion and therefore did not err.

■ ■ The trial court did, however, err in allowing response to Magee's request for admission of fact pursuant to Supreme Court Rule 216 (107 Ill. 2d R. 216). In July 1986, Magee served defendants Walbro and Mysel with the request asking for admission that the fair market value of the jacket between May and October 1982 was $3,400. Walbro and Mysel did not respond to the request. Rather, the trial court allowed the defendants' attorney to respond orally to the request just before opening statements, some four months after the request was served. Allowing the response was erroneous, and the request established the value of the jacket at $3,400.

Supreme Court Rule 216 states that requests for admission of facts may be served on any party, and that facts not specifically denied are admitted unless, within 28 days of being served, the party served denies the facts in a sworn statement or issues a written objection to the request. Parties must either deny matters specifically or set forth in detail why they cannot truthfully admit or deny those matters. In the instant case, the response was not only untimely, but conformed in no other way to the requirements of Rule 216 (107 Ill. 2d R. 216).

Cases interpreting Rule 216 give the trial court some discretion in allowing delays, with standards ranging from strict adherence to the 28-day limit to wide discretion. (See *Johannsen v. General Foods Corp.* (1986), 146 Ill. App. 3d 296, 496 N.E.2d 544, *appeal denied* (1986), 113 Ill. 2d 560.) Notwithstanding the discretionary standards, late responses were allowed in no case where, as in the instant case, the defendant failed to meet either the literal time requirement of

Rule 216 or any discretionary requirement set forth by the courts. (*Johannsen,* 146 Ill. App. 3d at 300.) In the instant case, defendants made no response at all until just before opening statements, some four months after the requests were served. Defendants made no attempt to show any of the discretionary factors for allowing tardy responses should apply.

Nor have responses been allowed where they have failed to conform to the other requirements of Rule 216. (*E.g., Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 375 N.E.2d 865 (matters of fact admitted where untimely responses were neither sworn nor served on requesting party).) In the instant case, the untimely responses were not sworn to by the parties, and the response by counsel was oral and not written. Walbro and Mysel argue that the response by the attorney was proper because Magee's attorney had been allowed to respond to allegations of an affirmative defense shortly before defendants responded to the Rule 216 request. This argument is without merit because counsel may respond to pleadings, but Rule 216 requires response by the party.

■ We disagree with the argument by Walbro and Mysel that Magee waived her right to rely on any Rule 216 admission by presenting evidence of the jacket's value at trial. Where facts have been admitted pursuant to a Rule 216 request and the party presents evidence at trial to prove those facts, the admissions are waived and the party must rely on the strength of the evidence adduced at trial. (*People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679, 684-85, 437 N.E.2d 1268. See also *Welch v. City of Evanston* (1980), 87 Ill. App. 3d 1017, 409 N.E.2d 450, *appeal denied* (1981), 82 Ill. 2d 588.) In the instant case, the trial court erroneously allowed the wholly untimely and improper response by defendants' counsel. With no admission to rely on, Magee had little choice but to present evidence at trial. Her alternative would have been to not make the record and hope that the trial court's allowance of the responses was reversed on appeal. It would be hardly just to rule that the value of the jacket was established by the request to which Walbro and Mysel wholly failed to respond, and then rule that Magee waived the admission by presenting evidence necessitated solely by defendants' failure to conform to Rule 216.

The requested admissions could have been deemed admitted 28 days after their service, and should have been deemed admitted by the beginning of trial almost four months after service, when the responses were allowed. Magee was entitled to rely on them. Because the response to Magee's request failed to meet the requirements of

Rule 216 in any respect, the trial court's allowance of the responses was erroneous.

Finally, the defendants asserted the defense of limitation of liability. This defense was not addressed by the trial court because judgment was entered in favor of the defendants. Because we reverse, we now address whether the liability of defendants Walbro and Mysel may be limited to $100, as stated on the receipt that Magee received in July 1982.

■ Walbro and Mysel argue that they effectively limited their liability to $100, citing *Schoen v. Wallace* (1948), 334 Ill. App. 294, 78 N.E.2d 801, *appeal denied* (1948), 400 Ill. 628, which upheld an agreement between a fur owner and fur storage company to limit the storage company's liability to $100. Magee argues that the fur owner in *Schoen* had some bargaining power which Magee did not, but later decisions indicate that a provision limiting the fur storer's liability will be upheld even where the customer has no more bargaining power than had Magee. (See *Blinder v. United States Fire Insurance Co.* (N.D. Ill. 1952), 103 F. Supp. 902; *Blume v. Evans Fur Co.* (1984), 126 Ill. App. 3d 52, 466 N.E.2d 1366.) *Schoen, Blinder* and *Blume* indicate, however, that the customer was aware of the limitation of liability *before* the furs were placed in storage. The *Schoen* decision was based in part on the fact that the plaintiff had dealt with the defendant before, knew of its insurance practices, could have chosen another furrier had she found the limitation objectionable.

In the instant case, Magee testified that she was not told of the limitation until after the fur was lost. Defendants rely on the receipt of July 1982, which stated that liability was limited to $100. The record does not reflect whether Magee was informed of the limitation any time before she received the receipt in July 1982. At any rate, Magee should have known of the limitation after she received the receipt in July, but by that time her furs had been at Mysel's for six weeks.

Although the liability of Walbro and Mysel appears to be limited to $100, the limitation does not apply in the instant case because Magee had no knowledge of the limitation before agreeing to store her furs. In *Schoen,* the court stated that it would be "unjust to permit the plaintiff to repudiate [the agreement to limit liability] because the coat was lost." (*Schoen,* 334 Ill. App. at 296.) In the instant case, it would be unjust to permit Mysel and Walbro to assert a limitation that was not made clear at the time that the bailment contract was made because the coat was lost. We therefore hold that the $100 lim-

itation of liability is inapplicable in this case.

For the foregoing reasons, judgment in favor of the defendants is reversed, and this case is remanded to the trial court to enter a judgment against defendants Walbro, Inc., and Mysel Furs and in favor of plaintiff Crella Magee in the amount of $3,400.

Reversed and remanded with directions.

CAMPBELL, P.J., and BUCKLEY, J., concur.