GEORGE R. KOCA, Plaintiff-Appellee, v. JOHN GAVIN, Defendant-Appellant.

First District (6th Division)   No. 1—89—1048

Opinion filed May 25, 1990.

James J. Gavin, of Westchester, for appellant.

Zenon Forowycz, of Forest Park, for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff, George R. Koca, brought this action against defendant, John Gavin, to recover unpaid rent due under a lease agreement between plaintiff and defendant. Defendant denied liability for the unpaid rent under the theory of constructive eviction and brought a counterclaim seeking damages allegedly occasioned by the unhabitable condition of the leased premises. After a bench trial, the court ruled in favor of plaintiff and against defendant and entered a judgment in the amount of $1,515 for the unpaid rent. The court further entered judgment in favor of plaintiff and against defendant on his counterclaim. Defendant appeals, contending that (1) the trial court abused its discretion in allowing plaintiff to file an untimely and unsworn response to defendant's request to admit facts, and (2) the court erred in finding that defendant was obligated under the lease to replace heating and air-conditioning units in the leased premises. We reverse and remand the cause for a new trial.

The record reflects that defendant had occupied the leased premises since February 1, 1979. Plaintiff and his wife purchased the building on August 1, 1985, subject to the lease agreement between defendant and the previous owner of the building. On December 9, 1985, plaintiff, plaintiff's wife, and defendant executed a new lease for the subject premises in which defendant operated his law practice. The term of the lease ran from February 1, 1986, to January 31, 1987, and the monthly rent was $625, with a security deposit of $360.

Paragraph five of the lease provided as follows:

"Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof, and no agreements or promises to decorate, alter, repair or improve the Premises, have been made by Lessor or his agent prior to or at the execution of this lease that are not herein expressed."

Paragraph six of the lease provided, in pertinent part, as follows:

"Lessee shall keep the Premises and appurtenances thereto in a clean, sightly and healthy condition, and in good repair, all according to the statutes and ordinances in such cases made and provided, and the directions of public officers thereunto duly authorized, all at his own expense, and shall yield the same back to Lessor upon the termination of this lease,

whether such termination shall occur by expiration of the term, or in any other manner whatsoever, in the same condition of cleanliness, repair and sightliness as at the date of the execution hereof, loss by fire and reasonable wear and tear excepted. Lessee shall make all necessary repairs and renewals upon Premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken and shall insure all glass in windows and doors of the Premises at his own expense."

Paragraph one of the rider to the lease provided that defendant was responsible for the maintenance of the interior of the leased premises and all appurtenances therein.

There were two Remington heating and air-conditioning units in the wall of the leased premises, and defendant repaired and maintained those units from 1979 to 1985. On August 13, 1985, defendant wrote a letter to plaintiff's wife advising her that one of the units was not functional, that it would cost $500 to repair the air-conditioning compressor, and suggesting that a new air-conditioner be purchased due to the age of the existing unit. Defendant also expressed an interest in expanding the leased space to accommodate his son, who was to join his law practice.

In early July 1986, defendant notified plaintiff that he had experienced a problem with one of the air-conditioners and that a repairman had indicated that it should be replaced at an estimated cost of $1,100. Defendant suggested that he split with plaintiff the cost of replacing the unit.

On July 23, 1986, defendant again wrote to plaintiff's wife stating that the two Remington air-conditioners were broken and were beyond repair. Defendant agreed that it was his obligation to maintain the units, but asserted that he was not responsible for their replacement. He contended that the units were obsolete, that he could no longer obtain parts for them, and that plaintiff was obligated to provide heating and air-conditioning units for the leased space. Finally, defendant stated that the weather had been intolerable and that because the windows were sealed, they could not be opened to provide ventilation. Defendant requested that plaintiff immediately replace the units in accordance with the terms of the lease. In the alternative, defendant claimed that plaintiff had breached the lease and that he would be required to look for other accommodations.

Plaintiff's wife responded to defendant in letters dated July 24, 1986, and July 29, 1986. In these letters, she stated that defendant had accepted the condition of the units when he signed the lease. As a

good-faith measure, plaintiff and his wife agreed to split with defendant the cost of replacing one air-conditioning unit. She reminded defendant that he had experienced problems with the units during the previous summer and indicated that he should have taken measures to repair them at that time. Plaintiff's wife enclosed a copy of an estimate to replace one air-conditioning unit and requested that defendant furnish another estimate from his repairman.

After receiving these letters from plaintiff's wife, defendant responded on July 30, 1986, indicating that because both units were obsolete and parts could not be found to repair them, they had to be replaced. Defendant stated further that he and his staff could not work under the conditions in the office. His secretary had been ill as a result of the heat and lack of ventilation. Defendant was unable to conduct interviews, depositions, real estate closings, and office meetings which were necessary to his practice. Defendant stated that he was concerned that the computer system would be damaged and malfunction because of the high temperature in the office, indicating that the thermometer in the office had registered in excess of 90 degrees. He indicated further that plaintiff's refusal to replace the air-conditioning units had left him with no alternative but to vacate the premises. Defendant stated that he would move out of the leased premises within 10 days or as soon thereafter as he was able to find other office space. He indicated that he found plaintiff's position unreasonable and to be a breach of the terms of the lease, but stated that he would not file any legal action for the breach.

In another letter dated August 12, 1986, defendant again stated his intention to vacate the leased premises and indicated that he would move as soon as he was able to find other facilities. In a letter dated October 23, 1986, defendant notified plaintiff that he would vacate the leased premises on or about November 10, 1986. He further advised plaintiff that there was a large opening under a window which would permit easy access into the office by a burglar or vandal. Defendant stated that because the weather had started to get colder, he had attempted to block the opening where there should have been a heating and air-conditioning unit, but indicated that inclement weather would thwart his attempts to protect his secretary and the computer equipment from the elements. He indicated further that he could not continue to operate his business under such circumstances, and he offered to sell plaintiff certain items of personalty used in his office which he would not require in his new office space. In a letter dated November 11, 1986, defendant confirmed that he would vacate the leased premises on November 12 and 13, 1986.

Defendant paid plaintiff the rent due under the lease through October 1986. On June 16, 1987, plaintiff filed a complaint against defendant seeking recovery of the rent due under the lease for the months of November and December 1986 and January 1987. Defendant denied liability for the unpaid rent under the theory of constructive eviction and brought a counterclaim seeking damages, including moving expenses and lost business and profits, allegedly occasioned by the uninhabitable condition of the leased premises. Plaintiff answered defendant's counterclaim, denying liability for the damages requested therein.

On July 15, 1988, defendant filed and served plaintiff with a document entitled "request for admission of facts and genuineness of documents and interrogatories directed to defendant." Plaintiff filed an objection to this request, asserting, *inter alia*, that the request was improperly directed to the defendant rather than to the plaintiff. Defendant filed another request for admission of facts and genuineness of documents and interrogatories against plaintiff on August 26, 1988. On October 12, 1988, the trial court entered an order which granted defendant leave to withdraw the request for admission filed on July 15, 1988, and to refile *instanter* the request to admit filed on August 26, 1988. Plaintiff was granted 28 days to answer the request to admit, and the cause was continued to January 11, 1989, for trial.

The request to admit asserted, *inter alia*, that the two Remington heating and air-conditioning units in defendant's office were inoperative, obsolete, and could not be repaired because parts were unavailable. The request also alleged that plaintiff was obligated under the lease to replace these units when they became inoperative. Plaintiff failed to respond to defendant's request to admit by November 9, 1988, and did not bring a motion under Supreme Court Rule 183 (107 Ill. 2d R.183) for an extension of time to respond. On January 5, 1989, plaintiff served defendant by mail with unsworn answers to the request. Plaintiff's answers to the request to admit included denials of many pivotal facts, including the approximate dates that the air-conditioning units became inoperative and were repaired by plaintiff.

When the case was called for trial on January 11, 1989, plaintiff answered that he was ready to proceed, but defendant requested a continuance and leave to substitute counsel. Over plaintiff's objection, the court granted defendant's requests and the trial date was continued to January 31, 1989. On that date, plaintiff filed with the court the unsworn answers to the request to admit, and defendant filed a motion to strike plaintiff's answers because they were untimely and were not in compliance with Supreme Court Rule 216(c) (107 Ill. 2d R.

216(c)). The trial court denied defendant's motion to strike plaintiff's answers, finding that the delay in filing had not prejudiced the defendant.

At trial, plaintiff testified as to his relationship and dealings with defendant and about the correspondence between them regarding the heating and air-conditioning units in the subject premises. He stated further that although the units could be repaired, he had made an economic decision to replace them and that he purchased new units for defendant's office after he learned that defendant was to vacate the leased space.

Plaintiff also called as a witness Gerald Lencki, an air-conditioning expert, who testified that he had been in the air-conditioning business for 25 years. He stated further that he was familiar with Remington heating and air-conditioning units and had inspected the two units in defendant's office during the summer of 1985. Lencki testified that parts from various other types of units were available, could be obtained from three sources, and could be interchanged with Remington parts to make the units in defendant's office functional. Although he was familiar with Remington heating and air-conditioning units of the type installed in defendant's office, Lencki did not know the type or model of those units and did not know whether the units needed repair or replacement. In addition, he had not inspected the units in July 1986 and was not familiar with their condition at that time.

Defendant testified as to the conditions in his office during the summer of 1986, stating that the two air-conditioners were not functional and that the windows were sealed and could not be opened to provide ventilation. Defendant contacted the company that had serviced the units in the past, but was advised that the air-conditioners were approximately 20 years old, were obsolete, and could not be repaired because no parts were available. He stated further that the summer of 1986 was hotter than usual, and the temperature in the office sometimes exceeded 90 degrees. Defendant placed a fan in the middle of the office, but was required to cancel appointments and, on several occasions, to close the office in the afternoon. He was unable to conduct real estate closings, depositions, and client interviews in the office due to the heat.

Defendant stated that beginning in May 1986 he advised plaintiff and his wife on many occasions that the two units in his office had to be replaced. Yet, nothing was done until July 1986 when plaintiff had the two units removed, leaving two large holes which were covered by metal gratings in the lower wall at the front of the offices immedi-

ately contiguous to the sidewalk.

Defendant executed a lease for new office space on August 29 1986, and stated that the air-conditioning units had not been repaired or replaced at that time. Defendant acknowledged, however, that one of the air-conditioning units was operating in July 1986 and that both units were operating in August 1986. He also stated that he needed more office space because his son was practicing with him.

Defendant called as a witness Jessica Griffin, his former secretary, who also testified as to the conditions in defendant's office during the summer of 1986. She stated that she was unable to operate the computer and word processing equipment for fear that it would overheat. Griffin testified further that although she received her full salary, she was unable to work on many occasions and had to leave the office early to avoid the extreme heat.

Plaintiff testified on rebuttal that when he purchased the building, there was a third air-conditioner near the south door of defendant's office, but he did not know whether this air-conditioner was used by defendant or whether it was operational. Plaintiff believed that this unit was installed by defendant.

After closing arguments, the trial court found, *inter alia*, that defendant knew there was a problem with the air-conditioning in August 1985 prior to signing the lease with plaintiff; that under paragraph five of the lease, defendant stated that he had examined the condition of the premises and had received them in good repair; that under paragraph six of the lease, defendant was obligated to make necessary repairs and to replace fixtures; and that under paragraph one of the rider to the lease, defendant was obligated to maintain the interior of the premises.

The court held that there was no constructive eviction and that defendant had breached the lease. The court held further that rent in the amount of $1,875 was due and owing to plaintiff, with a credit for the $360 security deposit. Accordingly, the court entered a judgment of $1,515 in favor of plaintiff and entered judgment in favor of plaintiff and against defendant on the defendant's counterclaim.

We initially consider defendant's claim that the trial court abused its discretion in allowing plaintiff to file his answers to defendant's request to admit. Defendant's argument is predicated upon the fact that plaintiff's answers to the request were unsworn and were untimely.

Supreme Court Rule 216(c) provides, in pertinent part, as follows:

> "Each of the matters of fact *** of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the

party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." 107 Ill. 2d R. 216(c).

Plaintiff has argued that the trial court properly allowed him to file his answers to the request to admit, citing some Illinois decisions which have held that a trial court has wide discretion with regard to requests to admit and may allow a late filing in order to prevent injustice. (See *Kismer v. Antonovich* (1986), 148 Ill. App. 3d 508, 499 N.E.2d 707; *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 478 N.E.2d 1132; *Thomas v. Village of Westchester* (1985), 132 Ill. App. 3d 190, 477 N.E.2d 49; *Daleanes v. Board of Education of Benjamin Elementary School District 25, Du Page County* (1983), 120 Ill. App. 3d 505, 457 N.E.2d 1382; *Homer G. Dickson & Co. v. Barraza* (1983), 115 Ill. App. 3d 5, 449 N.E.2d 990; *Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 430 N.E.2d 580; *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95.) We note, however, that in all of these cases the responding party filed sworn, albeit tardy, answers to the request to admit. Consequently, these cases are factually distinguishable from the instant case and are not controlling here.

■ We find more persuasive the cases which have held that a litigant's failure to file a timely and sworn response to a request to admit results in an admission of the facts asserted in the request and that the court should properly strike the improper response. (*City of Champaign v. Roseman* (1958), 15 Ill. 2d 363, 155 N.E.2d 34; *Johannsen v. General Foods Corp.* (1986), 146 Ill. App. 3d 296, 496 N.E.2d 544; *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 375 N.E.2d 865; *Banks v. United Insurance Co.* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167.) These cases have specifically noted that where the response is unsworn as well as untimely, it is tantamount to no response at all because it fails to comply with the requirement that denials, in whole or in part, be sworn to by the party answering the request. *Johannsen*, 146 Ill. App. 3d at 300, 496 N.E.2d at 546-47; *Chapman*, 59 Ill. App. 3d at 557-58, 375 N.E.2d at 869; *Banks*, 28 Ill. App. 3d at 62-63, 328 N.E.2d at 169-70.

■ In the instant case, defendant has argued that he prepared for trial based upon the unanswered requests to admit, and because he had relied upon plaintiff's admissions, he did not present the testi-

mony of an expert witness to counter the evidence presented by plaintiff's expert. Plaintiff has never filed a sworn statement, timely or otherwise, denying any of the facts asserted in defendant's request to admit. Moreover, plaintiff did not bring a motion asserting good cause for an extension of time to respond under Supreme Court Rule 183 (107 Ill. 2d R.183). Consequently, the trial court should have granted defendant's motion to strike plaintiff's answers, and it was an abuse of discretion to allow the filing of an untimely and unsworn response.

■ Contrary to plaintiff's assertion, defendant did not waive objection to the improper response to his request for admission. Although defendant presented evidence on the issues addressed in the request, he did so only after the trial court had already denied his motion to strike plaintiff's untimely and unsworn response. Consequently, the court had ruled that plaintiff's response to the request to admit could be considered, and defendant was compelled to introduce evidence in opposition thereto. *Cf. People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679, 437 N.E.2d 1268; *Welch v. City of Evanston* (1980), 87 Ill. App. 3d 1017, 409 N.E.2d 450.

■ We must also reject plaintiff's claim that defendant's motion to strike was properly denied because defendant had not given him prior written notice of the motion. Rule 2.1 of the circuit court of Cook County clearly provides that written notice of motions must be given except in actions appearing on the daily trial call or during the course of trial. Because defendant made his motion to strike on the scheduled trial date and after the case had already been called for trial, he was not required to provide plaintiff with prior notice and a copy of the motion. In addition, we note that the trial court granted plaintiff leave to file his response to the request *instanter* on the day of trial. Defendant's motion to strike was made immediately following the plaintiff's filing of his unsworn answers to the request to admit. Thus, the unsworn answers were not before the court until moments before the motion to strike was made, and defendant had no opportunity to serve plaintiff with prior notice of the motion.

In light of our decision, we need not address the other issues raised by the parties.

For the foregoing reasons, the judgments of the circuit court of Cook County are reversed, and the cause is remanded for a new trial on the complaint and counterclaim.

Reversed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.